22 F.3d 1559
 Jerry PALMER, as surviving spouse of Paulette Palmer,
deceased; Jerry Palmer, as administrator and personal
representative of the estate of Paulette Palmer, deceased;
Jerry Palmer, as the sole surviving parent of Unborn Infant
Palmer, deceased; and Jerry Palmer, as the personal
representative and next friend of Unborn Infant Palmer,
Plaintiffs-Appellants,
v.
HOSPITAL AUTHORITY OF RANDOLPH COUNTY, a Georgia public
corporation, d/b/a Patterson Hospital, Defendant,
John G. Bates, M.D.; John G. Bates, M.D., P.C., a
professional corporation, Defendants-Appellees.
 No. 93-8619.
 United States Court of Appeals,
Eleventh Circuit.
 June 21, 1994.
 
 C. Neal Pope, R. Timothy Morrison, Wade H. Tomlinson, Pope, McGlamry, Kilpatrick & Morrison, Atlanta, GA, Steven Saccoccia, Pope, McGlamry, Kilpatrick & Morrison, Decatur, GA, Teresa Pike Majors, Pope, McGlamry, Kilpatrick & Morrison, Atlanta, GA, for appellants.
 Jesse Groover Bowles, III, Cuthbert, GA, Robert C. Martin, Jr., C. Morris Mullin, Columbus, GA, for appellees.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before ANDERSON and BIRCH, Circuit Judges, and ATKINS*, Senior District Judge.
 BIRCH, Circuit Judge:
 
 
 1
 This case addresses a challenge by plaintiffs-appellants to the district court's dismissal of all claims against defendants-appellees for lack of subject matter jurisdiction. We agree with the district court that diversity was lacking in this case. We find, however, that the district court had the power, under 28 U.S.C. Sec. 1367(a), to exercise supplemental jurisdiction over the state-law claims against appellees, despite the dismissal of the sole federal question claim against appellees. Nevertheless, the district court made no finding as to the exercise of its discretion under 28 U.S.C. Sec. 1367(c). Since we find the district court's analysis to be incomplete, we are compelled to reverse the dismissal of all claims against appellees and remand to the district court for a full consideration of the propriety of exercising supplemental jurisdiction in this case.
 
 I. BACKGROUND
 
 2
 This case arises from the death of Paulette Palmer and her unborn infant on June 24, 1990. On May 29, 1992, Jerry Palmer, the surviving spouse of Paulette Palmer and the surviving parent of the unborn infant, filed suit in federal court in Columbus, Georgia, against three defendants, Hospital Authority of Randolph County d/b/a Patterson Hospital ("Patterson"), John G. Bates, M.D., and John G. Bates, P.C. (together, "Bates"). All defendants are Georgia citizens. The claims raised against the defendants were grounded in both federal and state law. The federal claims were brought against all three defendants under the Federal Patient Anti-Dumping Act, 42 U.S.C. Sec. 1395dd ("COBRA"). In addition, the complaint included state-law claims based on: (1) the Georgia Wrongful Death Act, O.C.G.A. Sec. 51-4-1 et seq.; (2) the Georgia Medical Malpractice Act, O.C.G.A. Sec. 51-1-27; (3) the Georgia Hospital Care for Pregnant Women Act, O.C.G.A. Sec. 31-8-40 et seq.; and (4) Georgia common law.
 
 
 3
 Jerry Palmer filed this suit in four distinct capacities: (1) as the surviving spouse of Paulette Palmer; (2) as the sole surviving parent of the unborn infant; (3) as administrator and personal representative of the estate of Paulette Palmer; and (4) as the personal representative and next friend of the unborn infant.[1]
 
 
 4
 On June 18, 1992, Bates filed a motion to dismiss for lack of subject matter jurisdiction, asserting that COBRA did not provide a cause of action against treating physicians. The district court denied this motion on July 30, 1992. The motion to dismiss was renewed in February 1993, on the basis that the case law had developed in the interim to such an extent as to demonstrate the absence of a private cause of action against Bates under COBRA.[2] The district court agreed and dismissed all claims against Bates, including those raised under state law, for lack of subject matter jurisdiction.
 
 
 5
 Following the dismissal of all claims against Bates, all plaintiffs together filed a motion for reconsideration, arguing that the court retained subject matter jurisdiction over their state-law claims against Bates under either diversity or supplemental jurisdiction. The district court again rejected these theories. It is this refusal of the district court to exercise subject matter jurisdiction that the appellants challenge.
 
 II. DISCUSSION
 
 6
 Due to the number of parties and claims involved, this case presents a complex set of facts on which to determine the existence of subject matter jurisdiction. For this reason, we set out several possible bases for jurisdiction in this case and discuss each in turn. First, we examine the validity of the district court's original exercise of jurisdiction, prior to the dismissal of the COBRA claim against Bates. Next, we analyze the two possible arguments for the continuing exercise of jurisdiction here: (1) diversity of citizenship coupled with a federal question, and (2) supplemental claim and party jurisdiction.[3] Finally, in the interest of judicial economy, we briefly discuss the discretion allowed a federal court under section 1367(c) which could affect the district court's decision relative to the exercise of its power of jurisdiction in this case.
 
 A. Original Basis of Jurisdiction
 
 7
 As originally filed, jurisdiction in this case was validly exercised as to all claims against all parties. First, the Georgia Plaintiffs asserted federal question claims under COBRA against both Bates and Patterson. There is no dispute that COBRA creates a private cause of action, grounded in federal law, sufficient to create federal question jurisdiction against Patterson. 42 U.S.C. Sec. 1395dd(d)(2)(A); 28 U.S.C. Sec. 1331. It is true that it has been settled in other circuits that COBRA creates no private cause of action against a private physician and medical professional corporation. See, e.g., Delaney v. Cade, 986 F.2d 387, 393-94 (10th Cir.1993); Baber v. Hospital Corp. of Am., 977 F.2d 872, 876-78 (4th Cir.1992); Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1040 n. 1 (D.C.Cir.1991). This court, however, has not decided the applicability of COBRA to parties such as Bates, and, at the time the suit was filed, the law in that area was unsettled in other circuits as well. As a result, the Georgia Plaintiffs originally asserted a non-frivolous federal question claim against both Bates and Patterson.
 
 
 8
 The state law claims by the Georgia Plaintiffs against Bates and Patterson were appropriate under traditional supplemental jurisdiction as supplemental claims. Section 1367 codifies the concepts previously known as pendent and ancillary jurisdiction. Prior to this statute, the primary source of guidance for the exercise of pendent claim jurisdiction was United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Gibbs divided the analysis into two sections: the power of a federal court to exercise pendent claim jurisdiction, and its discretion not to do so despite having the power. Id. at 725-26, 86 S.Ct. at 1138-39.
 
 
 9
 Section 1367 retains the same dichotomy, though its scope is somewhat different than the Gibbs tests. Under section 1367(a), unless section 1367(b) or (c) applies, the district court "shall have " supplemental jurisdiction over both additional claims and additional parties when those claims "are so related to claims in the action within [the] original jurisdiction [of the court] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. Sec. 1367(a). Section 1367(c), however, allows a federal court to exercise some discretion in refusing to hear a case otherwise within its supplemental jurisdiction.
 
 
 10
 In this case, original jurisdiction was initially based on the non-frivolous COBRA claims of the Georgia Plaintiffs against both Bates and Patterson. These claims arose from the two occasions on which Paulette Palmer presented herself to Patterson and Bates and allegedly received either mistreatment or no treatment at all.[4] The Georgia Plaintiffs' state law claims against Patterson and Bates are certainly part of the same case or controversy as the COBRA claims. The Georgia Plaintiffs' state-law claims all arise from the same two events as the COBRA claims. They will involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts. Accordingly, it was within the power of the district court to exercise supplemental jurisdiction over the state-law claims of the Georgia Plaintiffs against both Bates and Patterson, and doing so was not an abuse of discretion.[5]
 
 
 11
 Finally, the district court properly assumed jurisdiction over the state-law claims of the Alabama Plaintiffs against Bates and Patterson. There are two possible bases for this exercise: supplemental party jurisdiction and diversity. The exercise of supplemental party jurisdiction would involve both the power and the discretion of the district court in the same manner as discussed above in relation to the supplemental claims of the Georgia Plaintiff. If this was the basis of the district court's exercise of jurisdiction, we cannot say that it was an abuse of discretion.
 
 
 12
 Regardless of the exercise of supplemental party jurisdiction, however, there was diversity in the original format of this case. Diversity jurisdiction, as a general rule, requires complete diversity--every plaintiff must be diverse from every defendant. Strawbridge v. Curtiss, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). Since this requirement was designed to prevent abuse of diversity jurisdiction rules, for example by pleading in one diverse party in order to obtain a federal forum, the Supreme Court has recognized an exception to this requirement when abuse is unlikely: a court may ignore the citizenship of a plaintiff which has an independent basis of original federal jurisdiction against the defendant. Romero v. International Terminal Operating Co., 358 U.S. 354, 381, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959); see also Hiram Walker & Sons v. Kirk Line, 877 F.2d 1508, 1511-12 (11th Cir.1989); Brown v. Mine Safety Appliances Co., 753 F.2d 393, 395 (5th Cir.1985). In this case, the Georgia Plaintiffs are not diverse from either Bates or Patterson, both of whom are citizens of Georgia as well. However, the Georgia Plaintiffs had, at the inception of this case, a non-frivolous independent basis for federal jurisdiction against both Bates and Patterson--their COBRA claims. Therefore, the Georgia Plaintiffs need not have been considered in determining diversity, leaving only the Alabama Plaintiffs suing Bates and Patterson, Georgia citizens. Consequently, at the inception of this case there was, under Romero, proper diversity jurisdiction for the claims of the Alabama Plaintiffs against Bates and Patterson.
 
 
 13
 B. Jurisdiction Following Dismissal of COBRA Claim
 
 
 14
 The problem in this case arose when the district court dismissed the COBRA claim against Bates and, deciding it lacked subject matter jurisdiction as a result, dismissed all state-law claims against Bates as well. The district court stated, "What is left of the Plaintiffs' claims against these two Defendants [Bates] are claims asserted under Georgia law and, there being no diversity of citizenship, this Court would decline to exercise supplemental jurisdiction over those claims." District Court Memorandum Opinion and Order at 2 (Apr. 2, 1993) (R2-44-2). It is unclear from this statement whether the district court decided that it lacked subject matter jurisdiction based solely on the lack of diversity, whether it determined that section 1367 did not permit the application of supplemental jurisdiction, or whether it refused, in its discretion, to exercise permissible supplemental jurisdiction. The Georgia and Alabama Plaintiffs dispute the district court's determination that it lacked subject matter jurisdiction over the remaining claims against Bates, claiming that such jurisdiction is justified under either diversity or supplemental jurisdiction. We analyze these two possibilities in turn.
 
 1. Diversity Jurisdiction
 
 15
 As demonstrated above, the Romero exception to the complete diversity rule properly allowed the citizenship of the Georgia Plaintiffs to be ignored for the purpose of diversity analysis at the inception of the case. The Georgia Plaintiffs had an independent basis of original jurisdiction--a COBRA federal question claim--against both Bates and Patterson at that time. The Alabama Plaintiffs would have us extend that analysis to the period following the dismissal of the COBRA claim against Bates. We decline this invitation because it would expand the Romero exception beyond its legal and logical bounds.
 
 
 16
 The Romero exception to the Strawbridge complete diversity rule allows a court to ignore a particular party for diversity purposes because that party is properly before the court on a separate ground of original federal jurisdiction. Romero, 358 U.S. at 381, 79 S.Ct. at 485. This exception is logical because it allows claims that could each be brought separately in federal court to be tried in the same case. Hiram Walker & Sons, 877 F.2d at 1512. This was the posture when the Georgia Plaintiffs maintained a non-frivolous federal question COBRA claim against both Bates and Patterson. However, the district court's dismissal of the COBRA claim against Bates removed the Georgia Plaintiffs' independent basis of jurisdiction against Bates. The Alabama Plaintiffs would have us find that it is still proper to ignore the Georgia Plaintiffs' citizenship, as the Georgia Plaintiffs still have an independent federal question basis for being before the district court--their COBRA claim against Patterson.
 
 
 17
 While it is true that the COBRA claim against Patterson is a valid independent basis for the Georgia Plaintiffs' presence in federal court against Patterson, it does not serve as an independent basis for their presence on claims against Bates. To use an independent basis of federal jurisdiction by the Georgia Plaintiffs against Patterson to justify ignoring the citizenship of the Georgia Plaintiffs in determining the Alabama Plaintiffs' diversity jurisdiction over both Patterson and Bates would be to turn the Romero exception on its head. We have found no case that even mentions this possible application of Romero, much less endorses it. The logic underlying the exception to the complete diversity rule implies that in order for a party to be ignored in the diversity analysis, that party must have an independent basis of jurisdiction against all relevant opposing parties. To hold otherwise could conceivably open a back door to the abuses the complete diversity rule was designed to prevent. We decline to expand the Romero exception this far.
 
 
 18
 The Alabama Plaintiffs also appear to argue that even if the Romero exception does not apply directly to the fact that the Georgia Plaintiffs continue to have a valid federal question claim against Patterson, the exception is still viable since the Georgia Plaintiffs have an independent basis of federal jurisdiction against Bates--supplemental jurisdiction. The existence of such jurisdiction, which would of necessity be grounded in supplemental party jurisdiction, is discussed later in this opinion. Even if we were to hold that the Georgia Plaintiffs did have supplemental jurisdiction over Bates, however, that is insufficient as an independent basis of jurisdiction under the Romero exception. In order to meet the Romero exception, the non-diverse party must have an independent ground of original federal jurisdiction. See, e.g., Baker v. J.C. Penney Co., 496 F.Supp. 922, 924 (N.D.Ga.1980) ("[I]t is only when there is an independent basis of original federal jurisdiction (as opposed to pendent or ancillary jurisdiction) against non-diverse parties, ... that diverse and non-diverse [parties] may be joined in the same action."). Supplemental jurisdiction is, by its very nature, not original but additional; that is, it relies on the existence of some other original basis of jurisdiction. A case may not be brought in federal court on the grounds of supplemental jurisdiction alone. By definition, such jurisdiction must be attached to another basis of jurisdiction.[6] To allow the Georgia Plaintiffs' supplemental party claims against Bates to serve as a basis for ignoring the Georgia Plaintiffs in the diversity analysis would exceed the scope of the Romero exception. We decline to make this extension. Therefore, the district court was correct in holding that there is no diversity jurisdiction for the Alabama Plaintiffs against Bates in this case.
 
 2. Supplemental Jurisdiction[7]
 
 19
 The second possible basis of jurisdiction in this case is the exercise of supplemental jurisdiction. It might be anchored to either the COBRA claim by the Georgia Plaintiffs against Patterson or the now-dismissed COBRA claim by the Georgia Plaintiffs against Bates. The application of supplemental jurisdiction is statutorily controlled by 28 U.S.C. Sec. 1367.[8] The first part of that statute, section 1367(a), defines the permissible boundaries for the exercise of supplemental jurisdiction; that is, it delineates the power of the federal courts to hear supplemental claims and claims against supplemental parties. The second relevant portion for this case is section 1367(c), which describes the occasions on which a federal court may exercise its discretion not to hear a supplemental claim or admit a supplemental party, despite the power of the court to hear such a claim.[9] The power of the district court to maintain jurisdiction over the claims against Bates can be analyzed in several steps.
 
 
 20
 First, the only basis of original federal jurisdiction in this case, following the dismissal of the COBRA claim against Bates, is the COBRA claim against Patterson. The Georgia Plaintiffs are the only plaintiffs involved in this claim. Hence, the Georgia Plaintiffs and Patterson are properly before the district court on that COBRA claim. See 28 U.S.C. Sec. 1331.
 
 
 21
 Secondly, we examine the jurisdiction of the court to hear the state-law claims of the Georgia Plaintiffs against Patterson. This is the exercise of what was traditionally known as pendent claim jurisdiction. Such exercise in this case is entirely proper. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-51, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) (applying Gibbs standard); Rosen v. Chang, 758 F.Supp. 799, 803 (D.R.I.1991) (applying section 1367). The relevant parties are before the court on an independent ground of original federal jurisdiction. By its language, section 1367(a) authorizes a court to hear supplemental claims to the full extent allowed by the "case or controversy" standard of Article III. See 28 U.S.C. Sec. 1367(a). In this case, the state-law claims of the Georgia Plaintiffs against Patterson involve the same occurrences as the COBRA claim--two presentments of Paulette Palmer to Patterson, the alleged mistreatment or non-treatment of her, and her resulting death. While all the elements of the federal and state claims are certainly not identical, and in some cases are quite different, each claim involves the same facts, occurrences, witnesses, and evidence. This commonality is sufficient to satisfy the constitutional minimum required by section 1367(a). Hence, jurisdiction over the Georgia Plaintiffs' state-law claims against Patterson was within the power of the district court.
 
 
 22
 The third inquiry involves the state-law claims of the Alabama Plaintiffs against Patterson. This is traditional supplemental jurisdiction as well, what was formerly known as pendent party jurisdiction. Pendent party jurisdiction was met in this country with mixed acceptance for many years, culminating in the Supreme Court's pronouncement that while it was not unconstitutional, and not even unauthorized in every situation, there was no general congressional authorization for its exercise. Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Because the federal courts are courts of limited jurisdiction, the boundaries of which are set by Congress, subject to the Constitution, congressional authorization was required for pendent party jurisdiction. See Ortega v. Schramm, 922 F.2d 684, 692 n. 9 (11th Cir.1991) (per curiam). Such authorization was specifically provided by section 1367(a), which states, "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. Sec. 1367(a); see also McCray v. Holt, 777 F.Supp. 945, 947-48 (S.D.Fla.1991). In this case there is no original federal jurisdiction for any claims by the Alabama Plaintiffs against Patterson. However, Patterson is properly in federal court on the COBRA claims, and the state-law claims are validly raised against Patterson by the Georgia Plaintiffs, as discussed above. Hence, these causes of action were already properly present in federal court. These claims by the Alabama Plaintiffs involve the same facts, occurrences, witnesses, and evidence as the Georgia Plaintiffs' state-law claims against Patterson. The district court therefore had the power to exercise jurisdiction over these claims by the Alabama Plaintiffs against Patterson. See Rodriguez v. Pacificare of Texas, Inc., 980 F.2d 1014, 1017-19 (5th Cir.) (allowing supplemental state-law claims against physician anchored to ERISA claim against hospital), cert. denied, --- U.S. ----, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993); McCray, 777 F.Supp. at 947-48 (applying section 1367); Jones v. Village of Villa Park, 784 F.Supp. 533, 535 n. 1 (N.D.Ill.1992) (same).
 
 
 23
 The three aspects of jurisdiction previously analyzed are manifest in this case. They all address the federal court exercising jurisdiction over federal and state claims against Patterson. At issue in this case is the dismissal of state-law claims against Bates. It is therefore apparent that the district court at least impliedly exercised the above-discussed supplemental jurisdiction in retaining jurisdiction over the state-law claims against Patterson. Such exercise of jurisdiction was well within the court's power and discretion.
 
 
 24
 It is at this point our discussion diverges onto two separate paths. Two possible bases exist for the exercise of supplemental jurisdiction over the state-law claims of both the Georgia Plaintiffs and the Alabama Plaintiffs against Bates. Because the district court did not state whether it was dismissing these claims because it lacked the power to hear them under section 1367(a), or because it decided, in its discretion under section 1367(c), not to exercise that power, we must analyze both potential bases. We do so, holding that the district court had the power under either method to exercise supplemental jurisdiction over the state-law claims against Bates, and remand to the district court for it to consider section 1367(c) in deciding whether to exercise its power in this situation.
 
 
 25
 a. Supplemental Jurisdiction Based on the Dismissed COBRA Claim Against Bates
 
 
 26
 Under this line of inquiry, we analyze the power of the district court to exercise supplemental jurisdiction over the state-law claims of both the Georgia Plaintiffs and the Alabama Plaintiffs against Bates based on the dismissed COBRA claim of the Georgia Plaintiffs against Bates. Both the Georgia Plaintiffs' and the Alabama Plaintiffs' state-law claims, as discussed previously, were valid supplemental claims at the time of the filing of the case and for the approximately one-year period prior to the dismissal of the COBRA claim against Bates. These supplemental state-law claims are not required to be dismissed along with the underlying claim. Cohill, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7 (applying Gibbs standards); Rosado v. Wyman, 397 U.S. 397, 403-05, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970) (same); United States Anchor Mfg., Inc. v. Rule Indus., Inc., 7 F.3d 986, 1004-05 (11th Cir.1993) (same). Section 1367(a) provides no such mandate. Indeed, we have recently held that such dismissal may be an abuse of discretion where the state statute of limitations expired prior to dismissal of the anchor federal claim. Edwards v. Okaloosa County, 5 F.3d 1431, 1433-35 (11th Cir.1993) (per curiam). This power to retain jurisdiction after the dismissal of the underlying federal claim has not been altered by section 1367. Burns-Toole v. Byrne, 11 F.3d 1270, 1276 (5th Cir.1994); Evans v. City of Marlin, 986 F.2d 104, 109 n. 10 (5th Cir.1993). Section 1367(c) gives a court discretion to dismiss a supplemental claim or party when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. Sec. 1367(c)(3). It is unclear, however, whether the district court dismissed the state-law claims in this case because it believed that it lacked the power to hear them, or pursuant to the exercise of its discretion under section 1367(c). Therefore, we hold that the district court retained the power to hear the state-law claims against Bates after dismissing the underlying COBRA claims and remand to the district court for consideration of, and explication upon, the relevant discretionary elements of section 1367(c).
 
 
 27
 b. Supplemental Jurisdiction Based on the COBRA Claim of the Georgia Plaintiffs Against Patterson
 
 
 28
 We must resolve two issues in determining the power of the district court to exercise jurisdiction over Bates based on the COBRA claim of the Georgia Plaintiffs against Patterson--the state-law claims by the Georgia Plaintiffs and those by the Alabama Plaintiffs. First, we look to the claims by the Georgia Plaintiffs. This analysis is virtually identical to the exercise of jurisdiction over the claims of the Alabama Plaintiffs against Patterson; that is, it is traditional pendent party jurisdiction. Once again, section 1367(a) permits such jurisdiction to the full breadth allowed by Article III of the Constitution. As discussed above, the Georgia Plaintiffs have properly invoked supplemental claim jurisdiction to present their state-law claims against Patterson in federal court. These are identical to the claims the Georgia Plaintiffs have raised against Bates. They include precisely the same facts, occurrences, witnesses, and evidence. Such claims are properly considered to be the joinder of an additional party to claims that "form part of the same case or controversy under Article III." 28 U.S.C. Sec. 1367(a); see Urban v. King, 783 F.Supp. 560, 563 (D.Kan.1992). Therefore, this direct application of supplemental or pendent party jurisdiction is within the power of the district court.
 
 
 29
 Finally, we reach the most difficult inquiry: the power of the district court to exercise jurisdiction over the state-law claims of the Alabama Plaintiffs against Bates. Since we have found no case approving the exercise of such supplemental jurisdiction, this appears to be an issue of first impression. This inquiry involves a direct application of neither supplemental claim nor supplemental party jurisdiction. Rather, this is, in some respects, the linking of the two together. Neither the Alabama Plaintiffs nor Bates is present in federal court under an independent basis of original federal jurisdiction. Rather, both are within the reach of the court pursuant to its supplemental jurisdiction. In this situation, therefore, we are applying supplemental jurisdiction to claims and parties that are before the court themselves solely on a supplemental jurisdictional basis. As a general proposition, we do not favor this type of layering supplemental jurisdiction upon supplemental jurisdiction. The precise facts of this case, however, place such a jurisdictional pirouette within the power of the court under section 1367(a). There are no new claims or parties affirmatively being brought before the court by this exercise of supplemental jurisdiction. The Alabama Plaintiffs are legitimately before the court on claims against Patterson. Bates is within the court's jurisdictional reach, subject to its discretion, on the state-law claims of the Georgia Plaintiffs. Finally, the claims asserted by the Alabama Plaintiffs against Bates are nearly identical to those asserted by the Georgia Plaintiff against Bates. This situation, therefore, merely represents an application of jurisdiction to parties and claims that are already before the court. Were the district court, in its discretion, to agree to exercise jurisdiction over all other claims previously discussed, there would be no additional judicial action required to allow these claims to go forward. Once again, the same facts, occurrences, witnesses, and evidence are present in these claims as in those previously discussed. Hence, they are within the court's power, as "form[ing] part of the same case or controversy under Article III." 28 U.S.C. Sec. 1367(a).
 
 
 30
 The suggested analysis must be pursued methodically. As noted above, each state-law claim and each party is linked, finally, to a single COBRA claim, the only surviving basis of original federal jurisdiction. It is undisputed that the federal court has jurisdiction over the Georgia Plaintiffs' COBRA claim against Patterson. Once that is accepted, the logic and rationale behind supplemental jurisdiction allow the court to entertain the related state-law claims under section 1367(a) and the Constitution. We emphasize, however, that the foregoing discussion addresses only the power of the federal court to exercise jurisdiction in this case. The application of the court's discretion, pursuant to section 1367(c), may result in its determination that, despite its power to do so, it will not exercise jurisdiction in this case.
 
 C. Discretionary Concerns
 
 31
 Because the district court failed to engage in any analysis of the discretionary factors available to it in this case, we must remand for consideration of section 1367(c). In the interest of judicial economy, however, we briefly discuss the issue of discretion here.
 
 
 32
 The dichotomy between a federal court's power to exercise supplemental, or pendent, jurisdiction and its discretion not to exercise such power was originally articulated in Gibbs, 383 U.S. at 725-27, 86 S.Ct. at 1138-39. See also Cohill, 484 U.S. at 349, 108 S.Ct. at 618-19. Supplemental jurisdiction has since been codified in section 1367.[10] Under the language of section 1367, whenever a federal court has supplemental jurisdiction under section 1367(a), that jurisdiction should be exercised unless section 1367(b) or (c) applies.[11] The breadth of discretion afforded federal courts in these cases has been codified by section 1367(c).[12] Specifically, it provides for four occasions when a federal court may decline to exercise supplemental jurisdiction otherwise within its power. See 28 U.S.C. Sec. 1367(c). The remaining considerations articulated in Gibbs, however, have not become useless to federal courts in exercising this discretion. Rather, while supplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c), when one or more of these factors is present, the additional Gibbs considerations may, by their presence or absence, influence the court in its decision concerning the exercise of such discretion. Such factors include judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together. Gibbs, 383 U.S. at 725-26, 86 S.Ct. at 1138-39.
 
 
 33
 We have examined two possible bases of supplemental jurisdiction under which the district court has the power to hear the state-law claims of both the Georgia Plaintiffs and the Alabama Plaintiffs against Bates. The district court should now decide whether any of the factors listed in section 1367(c) applies to this case, so as to allow it to exercise its discretion not to hear these state-law claims. If the court decides that it has the discretion, under section 1367(c), to decline jurisdiction in this case, it should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience, in deciding whether or not to exercise that jurisdiction.III. CONCLUSION
 
 
 34
 The district court dismissed a COBRA claim by the Georgia Plaintiffs against Bates. That being the only federal claim against Bates, the court then dismissed the remaining state-law claims against Bates. However, the memorandum opinion did not clearly articulate whether the district court dismissed on the basis of lack of diversity jurisdiction, absence of power to exercise supplemental jurisdiction, or its discretion not to exercise otherwise permissible supplemental jurisdiction. We find that the district court was correct in holding that there is no diversity jurisdiction in this case. However, the district court had the power to exercise supplemental jurisdiction over the claims against Bates on one of two bases. First, supplemental jurisdiction could have been linked to the dismissed COBRA claim against Bates. Secondly, the COBRA claim against Patterson, still pending in federal court, could have been the anchor for supplemental jurisdiction. Although we find that the district court had the power to exercise jurisdiction in this case, we believe that the discretionary aspects of the exercise of such jurisdiction are best left to the district court in the first instance. Therefore, we REVERSE in part and REMAND the case to the district court for such a determination.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 At the time this suit was filed, Jerry Palmer was a citizen of Alabama. However, under the diversity jurisdiction statute, when acting in his representative capacities he is deemed to be a citizen of the state of which the deceased was a citizen at the time of death, Georgia in this case. See 28 U.S.C. Sec. 1332(c)(2). For the purposes of this jurisdictional appeal, there is no relevant distinction between Palmer's two representative capacities, and likewise between his two personal capacities. Therefore, for simplicity, when referring to Palmer in his representative capacities, we use the term "Georgia Plaintiffs," and when referring to him in his personal capacities, we use the term "Alabama Plaintiffs."
 Likewise, there is no relevant distinction in this appeal between John G. Bates personally and his professional corporation, John G. Bates, M.D., P.C. Therefore, we refer to these two defendants-appellees together as "Bates."
 
 
 [2]
 The parties have agreed that COBRA creates no private cause of action against Bates. We assume this to be true and express no opinion as to its correctness
 
 
 [3]
 Formerly known as pendent and ancillary jurisdiction, such grounds for the exercise of federal subject matter jurisdiction have now been codified in 28 U.S.C. Sec. 1367, which reads in relevant part:
 (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
 (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.
 (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
 (1) the claim raises a novel or complex issue of State law,
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 28 U.S.C. Sec. 1367.
 
 
 [4]
 We have no opinion as to what actually happened at Patterson Hospital at the time in question. That issue is not before us. We are concerned only with the alleged events that must be determined at trial and whether they constitute the same case or controversy as the federal question
 
 
 [5]
 That the causes of action include different standards is not relevant in determining whether the court had the power to exercise supplemental claim jurisdiction under section 1367(a); it would only be relevant to the exercise of its discretion to refuse to exercise such jurisdiction under section 1367(c)(4). The court denied Bates's jurisdictional challenge when the validity of the COBRA claim against Bates was still in question. In addition, the supplemental claims against Patterson, linked to the COBRA claim against same, are still pending in the district court. Therefore, the court apparently declined to exercise its discretion not to hear these supplemental claims. We cannot say that decision was an abuse of discretion
 
 
 [6]
 The language of section 1367(a) confirms this principle. It allows supplemental jurisdiction only when there is already original jurisdiction. Supplemental jurisdiction itself cannot be the basis for exercising supplemental jurisdiction; therefore, supplemental jurisdiction is not original
 
 
 [7]
 In this section we address only the power of the district court to exercise supplemental jurisdiction under section 1367(a). The court's discretion is discussed infra part II.C
 
 
 [8]
 For the relevant part of section 1367, see supra note 3
 
 
 [9]
 The appellees make the argument that section 1367(b) plays a role in this case, as a ground upon which the district court could have justifiably denied jurisdiction. Section 1367(b) deals with the situation in which the only basis for original federal jurisdiction is diversity, and a party is attempting to join additional claims or parties to the original diversity jurisdiction. As the Georgia Plaintiffs maintain a legitimate federal question claim as a basis of original federal jurisdiction in this case, which serves as an anchor on which to moor supplemental claims, the concerns to which section 1367(b) is addressed are absent here. Section 1367(b), therefore, is inapplicable in this case
 
 
 [10]
 For the relevant part of section 1367, see supra note 3
 
 
 [11]
 The language of section 1367(c) supports this conclusion. It begins: "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if...." 28 U.S.C. Sec. 1367(c) (emphasis added). This language would be superfluous if a district court could refuse to exercise supplemental jurisdiction at any time, without a specific finding that section 1367(c) allowed such a refusal. Section 1367(b) is not applicable to this case. See supra note 9
 
 
 [12]
 The Ninth Circuit appears to be the only United States Court of Appeals to have directly addressed the relationship between the Gibbs discretionary standards and section 1367(c). See Executive Software N. Am., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal., 15 F.3d 1484, 1491-95 (9th Cir.1994)