[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 17-10699
Non-Argument Calendar

---

D.C. Docket No. 2:15-cv-14105-RLR

VICENTE BRAVO,

Plaintiff-Appellant,

versus

JUAN LOOR-TUAREZ,
Medical Doctor,
FLORIDA HOSPITAL HEARTLAND,
FLORIDA HOSPITAL HEARTLAND MEDICAL CENTER,
ADVENTIST HEALTH SYSTEM/SUNBELT, INC.,
JOHN DOE SURGICAL DOCTORS 1-3, et al.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Florida

---

(March 6, 2018)

Before WILSON, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Vicente Bravo, proceeding pro se, appeals the district court's sua sponte dismissal of his 42 U.S.C. § 1983 amended complaint under 28 U.S.C. § 1915(e)(2)(B)(ii). First, Bravo argues that the district court erred in dismissing his amended complaint for failure to state a claim because he raised plausible constitutional claims of deliberate indifference to his serious medical needs. Second, he argues that the district court abused its discretion in determining that it had to dismiss his state law tort claims for lack of jurisdiction following the dismissal of his related federal civil rights claim. Finally, he argues that the district court abused its discretion in denying his motions for appointment of counsel and for leave to conduct discovery. After careful review, we affirm in part and reverse and remand in part.

I.

Bravo is a state prisoner at Avon Park Correctional Institution in Florida. On November 14, 2012, Bravo became sick. On November 18, he was transported and admitted to Heartland Hospital. A doctor at the hospital diagnosed Bravo with a bowel obstruction and performed surgery to remove a section of his intestine on November 19. Bravo says that he began to complain about pain in his abdomen almost immediately after surgery and told medical staff it felt like "something was

inside of him." Bravo says he experienced severe pain, suffered massive weight loss, and showed clear signs of infection in the days following his surgery. But Bravo says his doctors waited eight days after his surgery to perform an MRI, which "confirmed the existence of foreign objects" inside him. Bravo says his surgeons inadvertently left surgical clips or clamps and possibly surgical gauze in his abdomen after his first surgery. On December 1, Bravo had a second surgery, which he says was "sole[l]y necessitated by the clips/clamps (possible surgical gauze) left inside of Bravo" from his first surgery. Bravo says he "continues to experience pain from the effects of these surgical implements that were left inside of him."

In his amended complaint, Bravo raised a claim under 42 U.S.C. § 1983, arguing that the ten-day delay between his surgeries constituted deliberate indifference to a serious medical condition in violation of the Eighth Amendment. He also raised state law claims for medical malpractice. Bravo filed a motion requesting appointment of counsel, which the district court denied.

A magistrate judge prepared a Report and Recommendation ("R&R"), recommending that Bravo's § 1983 claim be dismissed for failure to state a claim upon which relief can be granted. The magistrate judge determined that the facts Bravo presented showed at most negligence, not the deliberate indifference required to state a claim under the Eighth Amendment. The magistrate judge also

held that because the court was dismissing all of Bravo's federal claims, the district court lacked jurisdiction over Bravo's state law medical malpractice claims.

Bravo objected to the R&R. He argued he had pled enough facts to show deliberate indifference because the medical staff unnecessarily waited ten days before performing the second surgery to remove the metal clips left behind from his first surgery. In addition, Bravo said the magistrate judge erred in stating that, because Bravo had no viable federal claim, the court was precluded from exercising supplemental jurisdiction over his state law claims. Bravo said "[t]he court was not required to accept jurisdiction over the Plaintiff's pendent state law claims, but it could have." Bravo also argued dismissal was inappropriate because he had requested discovery and the appointment of counsel, which the court did not provide.

The district court adopted the R&R and dismissed Bravo's claims. The district court also denied Bravo's other motions as moot. This appeal followed.

II.

We review de novo a district court's dismissal of a § 1983 complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1278 (11th Cir. 2001) (per curiam). The Prison Litigation Reform Act provides that any in forma pauperis action shall be dismissed if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

"The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)," and the same standard is used to govern dismissals under both provisions. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).

To survive dismissal under Rule 12(b)(6), a pleading must make a claim for relief "that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Facially plausible claims are those that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1380 (11th Cir. 2010) (quotation omitted). Exhibits that are attached to a pleading are considered alongside the pleading, but "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007); see also Fed. R. Civ. P. 10(c). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of fact in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (quotations omitted).

The Eighth Amendment forbids cruel and unusual punishment, which the Supreme Court has interpreted to include "deliberate indifference to serious

medical needs of prisoners." Id. at 104, 97 S. Ct. at 291. To prove a deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective test. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). First, a plaintiff must show that he had an "objectively serious medical need." Id. Second, a plaintiff must prove that the defendant acted with deliberate indifference to the serious medical need by (1) having subjective knowledge of a risk of serious harm, (2) disregarding the risk, and (3) displaying conduct beyond mere negligence. Id. at 1243, 1245. "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). However, an inadvertent or negligent failure to provide adequate medical care does not constitute deliberate indifference. Estelle, 429 U.S. at 105–06, 97 S. Ct. at 292.

Bravo argues that the defendants were deliberately indifferent to his serious medical needs because they waited ten days before performing his second surgery and did nothing to treat his pain effectively. He says his doctors knew he needed surgery, "[y]et for reasons of convenience and for financial concerns, not medical need, the surgery was put off for ten days."

The magistrate judge found that the medical records Mr. Bravo provided refuted the allegations in his complaint. Although we agree that the medical records do not provide a clear understanding of what occurred, when, or why, we do not believe the records preclude Mr. Bravo's claims. The medical records include post-surgical radiology reports that describe "suture materials and clips" within Mr. Bravo's his abdomen, which could support the version of facts as set forth in Mr. Bravo's complaint. The medical records, read in a certain way, may suggest that these suture materials and clips were intentionally used inside Mr. Bravo to repair his intestine after the blocked section was removed. But they are not definitive.

The records do not definitively show a second surgery on December 1. Nor do they show that the purpose of a second surgery was to remove these suture materials and clips. Rather, the discharge summary indicates a second laparotomy occurred on or before November 27, to drain an abscess, which had been noted as early as November 24. Two days in a row, the discharge summary refers to meeting with the surgeon to discuss "possible wound closure on Friday," perhaps indicating that the medical team had not yet closed his surgical wound as of November 27 and November 28. Here again, the records are not clear, but we do not have enough information to say for certain that Mr. Bravo has not set forth facts sufficient to make his claim plausible.

Finally, twice in the medical records, the doctor states: "There are opacities in the abdomen these are believed to be suture materials and clips. No definite surgical needle is seen." This phrase, "no definite surgical needle is seen," could be an error in the transcription of the doctor's dictated note: "no definite surgical need is seen"—but exactly what was meant by this phrase is unclear from the face of the record, and we certainly should not construe the records against Mr. Bravo at this point.

In sum, at this stage in the litigation, it is not appropriate to draw negative inferences from the silences or ambiguities in the medical records, as the district court did. We do not believe that the records definitively "show there was always consideration of a second operation to close the wound," nor can we say exactly why or when later operations occurred. A plaintiff's alleged facts must be taken as true unless contradicted by exhibits, and here the medical records do not completely refute Mr. Bravo's claims. See Griffin, 496 F.3d at 1206. Mr. Bravo's allegations that he told his doctors he felt something inside of him, and that they disregarded his complaints even though his condition was deteriorating, state a claim for relief that is plausible on its face. Twombly, 550 U.S. at 570. Based on the pleadings, and drawing all reasonable inferences in Bravo's favor, it does not "appear[] beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." Estelle, 429 U.S. at 106, 97 S. Ct. at 292

(quotation omitted). We therefore reverse the district court's dismissal of Bravo's § 1983 claim under 28 U.S.C. § 1915(e)(2)(B)(ii) and remand for further proceedings.

II.

We review the district court's decision not to exercise supplemental jurisdiction over a state law claim for abuse of discretion. Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 738 (11th Cir. 2006). "[T]he district court is in the best position to weigh the competing interests . . . in deciding whether it is appropriate to exercise supplemental jurisdiction." Lucero v. Trosch, 121 F.3d 591, 598 (11th Cir. 1997). But a district court abuses its discretion if it applies an incorrect legal standard. Bradley v. King, 556 F.3d 1225, 1229 (11th Cir. 2009).

A district court has original jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When a district court has original jurisdiction over some claims, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Id. § 1367(a). A district court "may decline to exercise supplemental jurisdiction" over state law claims when, among other things, it has "dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3) (emphasis added). "A district court therefore has the discretion to continue to

exercise jurisdiction over state law claims in a case even after dismissing the federal claim that created the original jurisdiction." Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1242–43 (11th Cir. 2007) (per curiam). In deciding whether to decline the exercise of supplemental jurisdiction, a district court should consider factors such as "judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together" when making the ultimate decision of whether or not to exercise supplemental jurisdiction. See Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1569 (11th Cir. 1994).

We have now reversed the district court's dismissal of Bravo's § 1983 claim, and in light of that ruling, we reverse the ruling on supplemental jurisdiction as well. Bravo's state law claims formed part of the same case or controversy as his federal law claims, and the district court had the power to exercise supplemental jurisdiction over them even after dismissing the federal law claims.[1] See Pintando, 501 F.3d at 1242–43. We thus remand for the district court to consider whether judicial economy, convenience, and fairness to the parties counsel in favor of

[1] The magistrate judge's R&R, which the district court adopted in full, said, "Here the plaintiff, having failed to state a claim for relief under 42 U.S.C. § 1983[, ] cannot present his state tort law claim." The R&R also referred to "the absence of jurisdiction" over Bravo's state law claims. These are not correct statements of law. Certainly, a court may exercise its discretion to dismiss state law claims after dismissing all federal claims, but if it does so, this dismissal is not required due to a lack of subject matter jurisdiction over those claims. See Carlsbad Tech., Inc. v HIF Bio, Inc., 556 U.S. 635, 640, 129 S. Ct. 1862, 1867 (2009). We also recognize that this Court has "encouraged" the dismissal of state law claims where all federal claims have been dismissed prior to trial, but again, the district court does retain discretion to exercise jurisdiction over state law claims in that circumstance. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam).

exercising supplemental jurisdiction over Bravo's state law claims, in light of the new posture of the case. See Palmer, 22 F.3d at 1569 (noting that "whenever a federal court has supplement jurisdiction under section 1367(a), that jurisdiction should be exercised unless section 1367(b) or (c) applies").

III.

We review the denial of a motion for the appointment of counsel for abuse of discretion. See Steele v. Shah, 87 F.3d 1266, 1270–71 (11th Cir. 1996). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1306–07 (11th Cir. 2011) (quotation omitted).

A district court may appoint counsel for an indigent plaintiff in a civil case but is not required to do so. See 28 U.S.C. § 1915(e)(1). "[P]risoners raising civil rights claims, like other civil litigants, have no absolute constitutional right to counsel." Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993). But the appointment of counsel in civil cases is appropriate when there are "exceptional circumstances, such as the presence of facts and legal issues which are so novel or complex as to require the assistance of a trained practitioner." Id. (quotation omitted and alteration adopted).

The district court did not abuse its discretion in declining to appoint counsel to represent Bravo. In its paperless order denying Bravo's motion for appointment of counsel, the district court wrote that it had "reviewed this case and finds that no compelling circumstances require the extraordinary procedure of seeking counsel for the plaintiff." In his brief, Bravo acknowledged that the appointment of counsel in his case was within the discretion of the district court and makes no specific argument for why his case is especially complex. Indeed, in his argument that the district court should have accepted supplemental jurisdiction over his state law claims, Bravo said his medical malpractice claims, which arise from the same set of operative facts, were "straightforward and simple." We therefore conclude that the district court did not abuse its discretion in finding that there were no exceptional circumstances to warrant appointment of counsel. See Kilgo, 983 F.2d at 193.

IV.

Finally, Bravo argues that the district court erred in denying his request for leave to conduct discovery. The district court's denial of Bravo's request to conduct discovery was consistent with its dismissal of his complaint. Because we have reversed the district court's dismissal of Bravo's complaint, he may seek discovery on remand, consistent with the Federal Rules of Civil Procedure.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**