UNITED STATES of America, Plaintiff–Appellee,

v.

John W. ROBERTS, Defendant–Appellant.

No. 88–8147

Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Oct. 25, 1988.

---

3. Appeal No. 87–8463 is dismissed.

Robert J. Hipple, Thomas A. Soderberg, Atlanta, Ga., for defendant-appellant.

Sharon Douglas Stokes, Asst. U.S. Atty., Atlanta, Ga., Gary R. Allen, Chief, Appellant Section, Tax Div., Dept. of Justice, William S. Rose, Jr., Charles E. Brookhart, William A. Whitledge, Washington, D.C., for plaintiff-appellee.

Before TJOFLAT, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

After appellant John Roberts failed to comply with a court order compelling the production of certain documents requested by appellee, the Internal Revenue Service ("I.R.S." or "Service"), the United States District Court for the Northern District of Georgia found him in civil contempt, imposing prison time and daily fines to pressure Roberts into obedience with the Court's earlier mandate. Roberts protests, insisting that he lacks possession of the sought after documents and thus cannot satisfy the court's demand. However, following a prima facie showing of a violation, mere protestations are insufficient to establish inability to comply with a court's order, for the burden of production on this issue then shifts to the alleged contemnor. The court below determined that the Service made a prima facie showing that Roberts disobeyed the court's enforcement order and further found that Roberts failed to rebut that prima facie showing of noncompliance. We affirm the contempt order.

## I.

The Service is investigating John Roberts' financial affairs. Accordingly, on August 4, 1986, I.R.S. Special Agent Randy Taylor issued an administrative summons directing Roberts to appear, testify, and produce certain corporate records regarding Southern Forest Products, Inc. ("Southern") and Century Wood Products, Inc. ("Century"), a pair of Georgia corporations at that time wholly owned by Roberts.[1]

Roberts failed to appear at the appointed time, and the Service petitioned the district court for an order enforcing the summons.[2] The district court ordered Roberts to show cause why he should not be compelled to comply with the summons, and it scheduled a hearing on the matter to be held before a United States magistrate.

At the hearing before the magistrate, Roberts argued against enforcement of the summons on the equitable ground that compliance with such an order would jeopardize his rights in other cases then pending on appeal. The magistrate found that Roberts neither denied possession of the

---

1. Special Agent Taylor is granted authority to examine records, take testimony, and issue summonses by I.R.C. § 7602 (West 1967 and Supp. 1988).

2. The district court is granted jurisdiction to enforce such summonses by I.R.C. §§ 7402(b) and 7604(a) (West 1967 and Supp.1988).

records sought to be produced nor raised lack of possession as a defense. The magistrate recommended that the summons be enforced, and neither party filed any objections to the magistrate's report. On May 14, 1987, the district court adopted the magistrate's report as the opinion of the court, ordering Roberts to obey the summons. Roberts did not appeal the order.

Pursuant to the court's enforcement order, Special Agent Taylor directed Roberts to appear before Taylor at Roberts' attorney's office on October 6, 1987. On that date, Taylor arrived at the attorney's office as arranged, but Roberts did not. Instead, Roberts' attorney offered Taylor a statement signed by Roberts which contended that Roberts did not have the requested records in his custody and control, and that he was unaware of their location, if they existed.

Finding Roberts' response unacceptable, the Service moved the district court for a contempt order to coerce Roberts into full compliance. The district court ordered Roberts to show cause why he should not be held in contempt. At the show cause hearing, both Roberts and his former co-shareholder in the two corporations, Ellen Wilbanks, testified. Roberts and Wilbanks had been fifty percent shareholders in Southern and Century until mid–1986.

Ellen Wilbanks testified that she had maintained the corporations' checkbooks and bank accounts. An outside accounting firm prepared the corporations' financials, which included computer-generated monthly statements of receipts and disbursements as well as profit and loss figures. To assist the accountants, the corporations provided the firm with bank statements, cancelled checks, receipts, deposit slips, and other documents, all of which were returned to Wilbanks with the monthly financial statements.

Following a falling-out in 1985, Roberts and Wilbanks sued each other. In May of 1986, as part of a settlement of those lawsuits, Wilbanks sold to Roberts her shares in the two corporations. At that time, Wilbanks returned to Roberts all the records of Southern and Century in her possession. These records included the documents furnished to the accountants and the retained monthly financials. Roberts testified that he did not maintain the corporate records, was unsure of what records had been kept, and could not recall what records he received from Wilbanks in 1986. Roberts insisted that the summoned documents had not been in his custody or control at the time the summons was served, and that he presently lacked possession of those documents.

## II.

■ As a threshold matter, we must determine whether the nature of the contempt proceeding below was civil or criminal. *Smith v. Sullivan*, 611 F.2d 1050, 1052 (5th Cir.1980).[3] If the contempt order was designed to exert pressure on the recalcitrant party, a device to compel compliance with an earlier court decree, then the proceeding was civil. *Id.* at 1053 (citing *Shillitani v. United States*, 384 U.S. 364, 368–70, 86 S.Ct. 1531, 1534–36, 16 L.Ed.2d 622 (1966)). Here the district court's purpose clearly was coercive. The court's order directed that Roberts be placed in custody and required Roberts to pay a daily fine of $100 beginning with the day of confinement. By purging himself of the contempt, Roberts can secure his release and cease paying the fine. Thus, Roberts carries the prison keys in his pocket. This is civil contempt.

■ The standard of review on appeal from a grant of civil contempt is whether the district court abused its discretion. *In re Newton*, 718 F.2d 1015, 1022 (11th Cir. 1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984). Thus, the petitioner in a civil contempt proceeding must establish by clear and convincing evidence that the alleged contemnor violated the court's earlier order. *Northside Realty Associates v. United States*, 605 F.2d

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (in banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

1348, 1352 (5th Cir.1979). Once the petitioner makes a prima facie showing of a violation, the burden shifts to the alleged contemnor to produce detailed evidence specifically explaining why he cannot comply. *United States v. Rylander*, 460 U.S. 752, 755, 103 S.Ct. 1548, 1551, 75 L.Ed.2d 521 (1983). This burden of production is not satisfied by "a mere assertion of inability." *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir.1984). Rather, in this circuit, a party subject to a court's order demonstrates inability to comply only by showing that he has made "in good faith all reasonable efforts to comply." *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir.1976) (citing *United States v. Ryan*, 402 U.S. 530, 534, 91 S.Ct. 1580, 1583, 29 L.Ed.2d 85 (1971)).

■ Here, the Service met its initial burden by introducing the uncontroverted declaration of Special Agent Taylor stating that Roberts has not complied with the court's enforcement order. Roberts, however, failed to carry his burden of production.

To the extent Roberts' defense of inability rested on an asserted lack of possession of the requested records at the time the summons was served, his argument was foreclosed by the court's enforcement order itself, which remains *res judicata* on the issue of possession at that time. *Maggio v. Zeitz*, 333 U.S. 56, 75, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948). Roberts raised the issue of possession in his answer to the Service's petition for an enforcement order, but he failed to sustain the allegation at the hearing before the magistrate. The magistrate's finding on this factual issue, adopted by the district court without objection by either party, is not subject to attack on appeal "except on grounds of plain error or manifest injustice." *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir.1983) (citation omitted), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). Finding neither ground present in this case, we refuse to set aside the magistrate's finding regarding Roberts' possession of the records in question at the time the summons was served. This issue properly was precluded at the show cause hearing on the contempt motion. *Rylander*, 460 U.S. at 757, 103 S.Ct. at 1552.

Roberts was free to argue, however, that he was unable to produce at the time of the contempt proceeding. *Id.* at 760, 103 S.Ct. at 1554. To establish the defense of present inability, Roberts needed to rebut the presumption of continuing possession arising from the enforcement order by introducing some evidence to the contrary. *Id.* at 760–61, 103 S.Ct. at 1554–55. The question of present ability to comply is one to be resolved by the trial court's sound discretion, a factual determination subject to the clearly erroneous rule. *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 983 (11th Cir.), *reh'g denied*, 791 F.2d 169 (11th Cir.), *cert. denied*, 476 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 120 (1986); Fed.R.Civ.P. 52(a). Ample evidence supports the district court's determination that Roberts failed to meet his burden of production. Roberts' testimony, which the district court concluded was "evasive and incomplete and lacked credibility," featured the line, "I don't recall," and was laced with nondenial denials (e.g., "I cannot say I never ..."; "I'm not going to say I did or didn't"). The record supports the district court's determination that Roberts' sketchy recall regarding the basic corporate records of his close corporations—in which he held the titles vice-president and secretary and later wholly owned—renders his testimony unconvincing. The presumption of continuing possession is not overcome by the alleged contemnor's "own denials which the court finds incredible in context." *Maggio*, 333 U.S. at 76, 68 S.Ct. at 411 (footnote omitted). By contrast, Ellen Wilbanks' testimony, which the district court called "unwavering and credible," comported with common sense notions of business practices. Wilbanks' story, that she transferred the commonplace corporate documents of which she was the custodian over to Roberts upon the latter's acquisition of all the corporations' shares, is both logical and reasonable. The district court's finding that Roberts fell short of meeting his burden of production was not clearly erroneous.

Even if Roberts does in fact lack possession of the summoned documents, he nonetheless was properly held in contempt. *Cf. Combs,* 785 F.2d at 984. The showing required by the rigorous "all reasonable efforts to comply" standard is a substantial one. *Id.* As noted in *Hayes,* 722 F.2d at 725, "Even if the efforts [Roberts] did make were 'substantial,' 'diligent' or 'in good faith,' ... the fact that he did not make 'all reasonable efforts,' establishes that [Roberts] did not sufficiently rebut the IRS' prima facie showing of contempt." (citation omitted). The evidence established that Roberts' efforts at compliance at best can be characterized as half-hearted. While Roberts contacted his corporations' accountants, he apparently did not ask to review their files. When asked whether he questioned Wilbanks about the whereabouts of Southern's records, Roberts replied, "I don't recall—I'm not saying we did not talk about it, but I don't recall that specific question." Roberts' searches do not "appear to have become more thorough as the IRS, through court action, intensified the pressure on [him]." *United States v. Rizzo,* 539 F.2d 458, 466 (5th Cir.1976) (defendant's increasingly thorough searches convinced the court that defendant was willing, but unable, to comply with court's enforcement order).

### III.

 The Service argues that Roberts' appeal is frivolous and urges this court to award the Service double costs and attorney's fees pursuant to Rule 38, Federal Rules of Appellate Procedure. The Service's position is that Roberts has brought this appeal "solely to delay incarceration under the District Court's contempt order." We have held that sanctions are justified where an appeal is "patently frivolous." *Hobson v. Fischbeck,* 758 F.2d 579, 581 (11th Cir.), *reh'g denied,* 763 F.2d 419 (11th Cir.1985). However, Roberts' arguments, while unpersuasive, are not "without even arguable merit." *Cf. id.* Because Roberts' appeal is not affirmatively vexatious, we decline to impose economic sanctions against him.

### IV.

Because the district court applied the correct legal test, it did not abuse its discretion in finding Roberts in civil contempt. Additionally, the record shows that Roberts did not make "all reasonable efforts" to comply with the district court's enforcement order demanding production of documents concerning the corporations Southern and Century. Thus, we affirm the district court's contempt order.

AFFIRMED.