**PUBLISH**


**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

----------------------------------------------

**No. 97-6327**

----------------------------------------------

**D. C. Docket No. CV-83-C-5137-NE**


**JAMES HUMPHREY CHAIRS, DANNY WAYNE OLIVER,
BOBBY WAYNE FISHER, RALPH JONES, MARVIN WALKER
HOPKINS, ALL PERSONS WHO ARE OR HAVE BEEN
INCARCERATED IN THE MORGAN COUNTY JAIL UNDER
THE CUSTODY AND CONTROL OF THE SHERIFF OF
MORGAN COUNTY, ALABAMA SINCE 3/8/82,**

                                              **Plaintiffs,**

        **versus**

**MORGAN COUNTY SHERIFF BUFORD BURGESS,
MORGAN COUNTY COMMISSIONERS,**

                                              **Defendants-Appellees,**

**REGIONAL COMMISSIONERS DEPARTMENT OF
CORRECTIONS,**

                                              **Defendant,**

ALABAMA DEPARTMENT OF CORRECTIONS,
JOSEPH SIMON HOPPER, COMMISSIONER,
ALABAMA DEPARTMENT OF CORRECTIONS,

Defendants-Appellants.

-------------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Alabama

-------------------------------------------------------------------

(June 18, 1998)

Before EDMONDSON, CARNES and MARCUS, Circuit Judges.

EDMONDSON, Circuit Judge:

In this jail-overcrowding case, we conclude that the district court erred in holding the State in contempt for violating an injunction. We vacate the

district court's order and remand for further proceedings.

## Background

In March 1986, a consent decree (Decree) was entered by the district court for the Northern District of Alabama.[1]

---

[1] The Decree was the result of a class action complaint filed by

Under the Decree, the Alabama Department of Corrections and the Commissioner of the Alabama Department of Corrections (the State) were ordered to remove State prisoners from the Morgan County Jail within thirty days of the receipt by the State of the conviction and sentencing transcript for the transferring inmate.

On 20 February 1997, the Morgan County Sheriff and Morgan County (the

inmates in the Morgan County Jail (Plaintiffs). The complaint alleged that state and county prison officials had violated and were violating Plaintiffs' rights under the Eighth and Fourteenth Amendments.

County) filed a motion to enforce the Decree. At that time, the County alleged that there were thirty-two prisoners who, under the terms of the Decree, should have been already removed to state prison facilities. The motion requested that the court hold the State in contempt and impose sanctions on the State for failing to comply with the Decree. In addition, counsel for the Plaintiffs filed a motion for attorney's fees due to the repeated and

costly efforts to ensure that the State comply with the Decree.

On 3 March 1997, the district court filed an order directing the State to show cause for their noncompliance at a hearing on 20 March 1997. On 18 March 1997, the State filed a response to the County's motion asserting that the State was unable to comply with the Decree due to substantial overcrowding of the state prison system. On the same day (that is,

two days before the contempt hearing), the State also filed a motion to modify the Decree.

At the show cause hearing, the district court found that, contrary to the State's argument, it was possible for the State to comply with the Decree. As a result, the district court issued the following order:

[T]he Court finds and concludes that the Department has wilfully violated the Consent Decree.

[1] In order to compel compliance with the Consent Decree, it is hereby ORDERED that the United States

7

Marshall shall take the Commissioner or his designee[a] into custody and detain him/her until such time as the Department has fully complied with the terms of the Consent Decree.

[a] Henceforth, for each day a state inmate is held in the Morgan County Jail in violation of the terms of the Consent Decree, the Department shall reimburse the Morgan County Jail at the rate of Twenty-three Dollars ($23.00). Said reimbursement shall be made by the twentieth (20th) day of the succeeding month following the violation.

---

[2] Counsel for the State was ultimately detained for a few hours until compliance was achieved. We stress that counsel (Ms. Ellen Leonard) was not found to be in contempt of court and was not blamed for the State's contempt; she volunteered to stand in the place of the Commissioner as the Commissioner's designee.

8

[3] Counsel for the county defendants and the plaintiffs shall have and recover from the Department a reasonable attorney's fee for all services rendered in efforts to achieve compliance with the Consent Decree since 1990. Within fifteen (15) days of the date of this Order, said counsel shall file with the court a statement of the fee requested, services rendered, hours expended, and expenses incurred in these efforts. In the absence of agreement between the parties, the matter shall be set down for hearing on motion by either counsel.

[4] The court shall impose a fine as an additional sanction for the past and current violations of the Consent Decree. The amount of the

*fine shall be reserved for further hearing and determination.*

The State now appeals the district court's failure to modify the Decree, the contempt finding and the imposition of the first three sanctions.

## Discussion[3]

---

[3]Recognizing our continuing obligation to review jurisdiction during the appellate process, we conclude that we lack jurisdiction to consider the State's arguments challenging the first and third sanctions (incarceration of State's counsel and award of attorney's fees). See generally National Solid Wastes Management Ass'n v. Alabama Dep't of Environmental Management, 924 F.2d 1001, 1002 (11th Cir. 1991).

We must decline to consider the State's argument challenging the incarceration of its counsel because the matter is moot. "In the context of purely coercive civil contempt, a contemnor's compliance with the district court's underlying order moots the contemnor's ability to challenge his contempt adjudication." In re Grand Jury Subpoena Duces Tecum, 955 F.2d 670, 672 (11th Cir. 1992).

We also decline to consider the State's argument challenging the district court's award of attorney's fees because the district court's order was not final on that point. The amount of fees to be paid had yet to be determined. See Combs v. Ryan's Coal Co., 785 F.2d 970, 976 (11th Cir. 1986); see also Republic Natural Gas Co. v. Oklahoma, 68 S.Ct. 972, 976 (1948); Forschner Group, Inc. v. Arrow

The State contends that it should not have been held in contempt for two reasons: (1) that the district court improperly declined to hear the motion to modify the Decree at the show cause hearing; and (2) that the circumstances made the finding of contempt error. We discuss each in turn.

A. Postponement of Hearing for Motion to Modify

We have said that "typically" motions to modify should be heard at the same time as the contempt proceeding. See Mercer

Trading Co., 124 F.3d 402, 410 (2nd Cir. 1997).

But we can review the district court's order to the extent that contempt was found and a prospective fine -- the $23.00 per day -- was then imposed on the State. See generally 28 U.S.C. § 1292(a)(1) (granting jurisdiction over interlocutory order that, in effect, modifies an injunction). See also Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1533-34 n.1,2 (11th Cir. 1986); Motorola, Inc. v. Computer Displays Int'l, Inc., 739 F.2d 1149, 1154-55 (7th Cir. 1984).

**v. Mitchell**, 908 F.2d 763, 768 (11th Cir. 1990).  This practice makes sense because commonly the defense to contempt is based on changed circumstances that would also warrant modifying the pertinent decree.

But, the circumstances that might warrant a finding of no contempt in a particular instance may not warrant a modification of a decree.  For example, the pertinent new circumstances may be too temporary or aberrational.  And circumstances that might warrant a court to exercise its discretion and loosen a decree by way of modification may not necessarily amount to a complete defense to contempt under the earlier unmodified decree.[4]  It depends.  And, we have never

_____

[4]Modification is justified when "a significant change in facts or law warrants revision of the decree and . . . the proposed modification is suitably tailored to the changed circumstances."  **Rufo v. Inmates of Suffolk County Jail**, 112 S.Ct. 748, 765 (1992); **see** **also** **Heath v. DeCourcy**, 992 F.2d 630, 634 (6th Cir. 1993) (Institutional reform consent decrees "are subject to a lesser standard of modification, requiring the lower court to identify a defect or deficiency in its original decree which impedes achieving its goal, either because experience has proven it less effective,

12

ruled out altogether the power of a district court, in the management of its docket, to postpone a formal hearing on a motion to modify to a time after the show cause hearing on contempt.

In this case, the motion to modify was filed two days before the show cause hearing was to be held. It was unclear at the show cause hearing that all the parties had then been served with the motion to modify. In such circumstances, the district court did not commit reversible error by declining to hear the motion to modify although the court went on to find the State to be in contempt. As a result, the questions here are whether the show cause hearing on contempt (when viewed merely as a show cause hearing on contempt) was adequate and whether the finding of contempt was justified.

---

disadvantageous, or because circumstances and conditions have changed which warrant fine-tuning the decree.") (internal quotations and citation omitted)).

13

## B.    Contempt Proceedings

"[C]ivil contempt proceeding[s are] brought to enforce a court order that requires [a party] to act in some defined manner."  <u>Mercer</u>, 908 F.2d at 768.  A petitioner "must [first] establish by clear and convincing evidence that the alleged contemnor violated [a] court's earlier order."  <u>United States v. Roberts</u>, 858 F.2d 698, 700 (11th Cir. 1988) (citation omitted). Once this prima facie showing of a violation is made, the burden then shifts to the alleged contemnor "to produce evidence explaining his noncompliance" at a "show cause" hearing.  <u>Citronelle-Mobile Gathering, Inc. v. Watkins</u>, 943 F.2d 1297,   1301 (11th Cir. 1991); <u>see</u> <u>Mercer</u>, 908 F.2d at 768; <u>Roberts</u>, 858 F.2d at 701.

At the show cause hearing, the contemnor is "allowed to show either that he did not violate the court order or that he was excused from complying."  <u>Mercer</u>, 908 F.2d at 768.   A

14

contemnor may be excused because of an "inability" to comply with the terms of the order. See Watkins, 943 F.2d at 1301; Roberts, 858 F.2d at 701. To satisfy this burden, a contemnor must "offer proof beyond the mere assertion of an inability." Watkins, 943 F.2d at 1301. Instead, a contemnor "demonstrate[s] an inability to comply only by showing that [he has] made 'in good faith all reasonable efforts to comply.'" Id. (quoting United States v. Ryan, 91 S.Ct. 1580, 1583 (1971)); see also Roberts, 858 F.2d at 701; Newman v. Graddick, 740 F.2d 1513, 1525 (11th Cir. 1984) ("[A] person who attempts with reasonable diligence to comply with a court order should not be held in contempt.").

On appeal, the State contends that the district court committed basically two errors. First, the State argues that the district court's limited inquiry and determination about the State's "ability to comply" was too narrow. Second, it contends that the

district court improperly excluded evidence that was relevant to a determination of "ability."

In this case, the State was violating the Decree. The State said that its violation should be excused. The State claimed that its violations were the result of an inability to comply with the terms of the Decree. And to support the claim of inability, the State offered evidence of these circumstances: (1) that the state prison system's resources were entirely inadequate, that is, not enough facilities, beds and guards were available for all of the prisoners being sentenced; and (2) that the State was subject to a large number of court orders[5] requiring the removal of prisoners from county jails.

The district court, however, rejected the State's argument. In so doing, the district court appears to have limited its focus

---

[5]The State was subject to 67 orders contained in one blanket court order and an additional 25 individual court orders. The State, without objection, elicited this testimony from the Commissioner of the Alabama Department of Correction.

16

to the fact that the State transferred most of the excess prisoners out of the Morgan County Jail before the show cause hearing.[6] And, because the State actually transferred prisoners from the county jail to state prisons, the district court found the State must have had the ability to comply with the Decree.[7]

---

[6]Before the show cause hearing, the State transferred out of the Morgan County Jail 30 of the 32 prisoners whose presence violated the terms of the Decree.

[7]The district court specifically said this about the State's ability to comply:

> I understand that proposition [about inability]. But the proof of the pudding is in the eating.
>
> In fact, if I'm to believe what has been said here today, the commissioner, in the last thirty days, has complied at least – well, with the exception of two inmates, hasn't he?
>
> ***
>
> The court finds that over the

17

years that this consent order has been in effect, the State Department of Corrections has been in consistent noncompliance. The court finds that it is only after the plaintiffs and/or the county defendant files a motion with the court that the State defendant responds. And the court finds that the defendants have not shown an inability to comply with the court order with respect to the most recent motion filed by the county defendant. The evidence shows that in fact the State could have complied with the order.... The court finds that with two exceptions the State defendants have removed the prisoners who were identified in the attachment to the motion to hold the defendants in contempt.

to comply with the Decree, the district court concluded the State was in contempt. We conclude that the district court's interpretation of "inability" was incorrect.

That it was not strictly impossible for the State to transfer prisoners from the Morgan County Jail when necessary is immaterial.[8] It does not prove or mean that the State was not unable to comply with the Decree. "Inability," as a defense to contempt, does not mean that compliance must be totally impossible. Instead, the inability that will absolve a party from being held in contempt requires only that the noncomplying party has made "in good faith all reasonable efforts to comply" with the terms of a court order. <u>Watkins</u>, 943 F.2d at 1301; <u>Roberts</u>, 858 F.2d at 701; <u>see</u> <u>also</u> <u>Newman</u>, 740 F.2d at 1525 (if

---

[8] The district court's written order found and concluded that the State "has not made a reasonable effort to comply with the Consent Decree." But the district court elaborated on this statement not much later in the same order: "The court does not credit the Department's assertion that it has been impossible to comply with the Consent Decree." It is this notion -- that "impossibility" is important -- that worries us about the district court's decision.

19

party uses "reasonable diligence" to comply with an order, he should not be held in contempt). The district court should have considered fully the State's ability (or inability) in the light of this "reasonable efforts" standard. By failing to demonstrate such consideration, the district court erred.

In this case, the State was allowed to put in some evidence to support its claim of inability. But, the State sought to offer other evidence showing that its compliance with the Decree could cause it to violate the orders of other courts. The district court, however, excluded this evidence and, instead, stated that it was limiting its inquiry to whether there was compliance with this Decree.[9] On appeal, the State argues that the district court

---

[9]This exchange took place during the show cause hearing:
BY MS. LEONARD [TO MR. HOPPER]
Q    Based on the number of inmates that are being sentenced from the county jails presently, can you comply with all the consent decrees and consent orders that the Department of Corrections is presently under?
MR. SHINN: We object to that.
A    No, I cannot.

improperly excluded this evidence.  We agree.  Courts cannot blind themselves to reality. The array of conflicting orders[10] to which a party is subject is a material circumstance in a contempt proceeding.

A party demonstrates an "inability" to comply by showing that he has made "'in good faith all reasonable efforts to

---

THE COURT: The objection is sustained.

MS. LEONARD: Your Honor, if I could just argue one little point on it.

THE COURT: Not right now.  We are going to finish up with the evidence first, then we will take argument.

MS. LEONARD: Well, I think under the law, reasonable diligence and whether or not you can do -- make an effort to not be in contempt is highly relevant.

THE COURT: Well, it seems to me that the inquiry this morning is, number one, whether the department has had knowledge of the [Decree]; and number two, whether assuming that knowledge, it has complied with the [Decree].

[10] The words "conflicting orders" may not be exactly right.  As we understand it, this case does not involve the circumstance where one court has ordered a party "to do X" and another court has ordered the same party "to do no X."  The different orders in this case might be more accurately described as potentially conflicting orders, but "conflicting orders" is a shorter phrase that adequately captures our meaning.

comply.'"  Watkins, 943 F.2d at 1301 (quoting Ryan, 91 S.Ct. at 1583).  We do not interpret "good faith" and "reasonable efforts" to require necessarily that a party violate the order of one court to avoid violating the order of another court.  We do not rule out that a party may be acting in "good faith" and with all "reasonable effort" to comply with a court order, but still violate that order, because compliance would cause the violation of other court orders.[11]  As such, evidence about whether, and to what extent,

---

[11]We stress, however, that merely being subject to different court orders constitutes no defense to contempt.  Despite the presence of conflicting orders from other courts, a  district court can correctly conclude, after studying all the circumstances, that a party has failed to act reasonably to comply with the terms of its decree.

For example, a party would not act in good faith and with all reasonable efforts if he did little or nothing to comply with any of the various court orders: excusing each failure by saying to each court that he could not comply at the same time with some other court's order.  Or maybe a district court could determine that a party has not acted in good faith or with all reasonable efforts by failing to comply with its orders that were first in time over later inconsistent orders of other courts.  These sketches are just examples.

We do not decide today whether conflicting orders from other courts will be a complete defense to contempt in this case.  But they might be.  And evidence about the existence, nature, timing, and so forth of such orders, as well as evidence about steps, if any, the State

the State was unable to comply with the Decree in relation to the orders of other courts was material to the contempt determination.   The district court erred to the extent that it precluded such evidence from being offered and considered.

We conclude that the district court's finding of contempt, which was based on the district court's erroneous determination of "ability," was an abuse of discretion.  We vacate the district court's order and remand for further proceedings consistent with this opinion.[12]

_____

has taken to be relieved from the necessity of obeying these other orders, is material evidence.  The district court must consider, along with all the other circumstances, whether compliance with its Decree would cause the State to be in violation of other courts' orders.

[12]Because we have concluded already that the district court's decision must be vacated to allow for further proceedings, we do not decide the merits of the State's argument challenging the prospective fine.   We do note, however, that prospective fines are an extraordinary remedy.  See Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1536 (11th Cir. 1986).  As such, they should only be imposed to remedy what the district court has determined to be "flagrant" violations of an order.  And then only when lesser remedies have been determined to be likely to fail.  See id.  Most important, never can the prospective fines operate to

**VACATED and REMANDED.**

---

impose absolutely strict liability on the State.  The future might, in fact, produce some good excuses; and the State must remain free to bring what it believes are, in fact, good excuses to the court.