[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 24, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16904

_____

D. C. Docket No. 02-00925-CV-BMM-1

QUEBELL P. PARKER,
SANDRA SKYPEK,
CHARLES PARKER,
individually, as attorneys in fact for
Quebell Parker, and in the name of
Quebell Parker,

Plaintiffs-Appellants,

versus

SCRAP METAL PROCESSORS, INC.,
a Georgia corporation,
L.B. RECYCLING, INC.,
a Georgia corporation
J. WAYNE MADDOX,
individually and as the successor in
interest to L.B. Recycling, Inc.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 24, 2006)**

Before BIRCH, PRYOR and FAY, Circuit Judges.

FAY, Circuit Judge:

Quebell Parker and her children, Sandra Skypek and Charles Parker ("plaintiff"), appeal the district court's denial of her Motion to Show Cause as to why Scrap Metal Processors, Inc. ("SMP") and J. Wayne Maddox (together: "defendant"), have failed to comply with this Court's order in Parker v. Scrap Metal Processors, Inc., 386 F.3d 993 (11th Cir. 2004), to obtain a solid waste handling permit and to implement a legally sufficient Storm Water Pollution Prevention Plan ("SWPPP"). Additionally, this Court ordered a retrial as to damages only, on plaintiff's state tort claims. Rather than conduct the retrial, the district court dismissed the case for lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1367(c), which the plaintiff also appeals. For the reasons set forth below, we reverse as to the dismissal for lack of subject-matter jurisdiction and the denial of the motion to show cause with regard to obtaining a solid waste handling permit. However, we affirm, without prejudice, the district court's denial of the motion to show cause as to the implementation of the SWPPP.

## I. BACKGROUND

Plaintiff's family has owned the property at 9144 Washington Street, Covington, Georgia ("Parker property") for approximately fifty years. The

2

adjacent property, at 8194 Washington Street ("defendant property"), has had a junkyard/scrap metal yard operating on it since the 1960s or 1970s. J. Wayne Maddox took over the junkyard and scrap metal yard operation in or about 1990, and acquired ownership of the property in 1994.

Plaintiff filed this action on April 10, 2002, against defendant and its predecessors in interest, alleging negligence, negligence per se, nuisance, trespass, violations of the Clean Water Act ("CWA") 33 U.S.C. §§ 1251-1386, the Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. §§ 6901-6992k, and various state environmental statutes.

On August 8, 2003, after a jury trial, the Northern District of Georgia entered judgment in favor of plaintiff on all counts. Defendant was ordered to pay a total of $1 million in damages to the plaintiff, and pay civil fines for its CWA and RCRA violations to the government. Defendant was further ordered to implement a Storm Water Pollution Prevention Plan, and to obtain a solid waste handling permit from the Georgia Environmental Protection Division ("EPD").

The defendant appealed the district court's findings of liability under the CWA and the RCRA, as well as the award of damages. Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1000 (11th Cir. 2004). On September 28, 2004, this Court upheld the findings of liability based upon the CWA and the RCRA, but

reversed the damages award because the district court did not instruct the jury that damages were only recoverable by a party that owned or occupied the Parker property during the relevant time period. Id. at 1018. Although Mrs. Parker's children were included in the damage award, they did not own or occupy the Parker property during the relevant time period. Accordingly, this Court ordered the district court hold a new trial on damages. Id. At 1019.[1] On remand the plaintiffs sought damages as to Mrs. Parker only.

On September 6, 2005, the district court ordered the parties to submit briefs addressing whether the court should exercise subject-matter jurisdiction over the remaining state law damage claim. On September 23, 2005, plaintiffs submitted their motion to require defendants to show cause as to why the district court should not hold defendants in contempt for failing to comply with its August 8, 2003 order. Plaintiffs alleged the defendants had failed to implement a legally sufficient SWPPP and had not obtained a solid waste handling permit, as per the orders of the district court and this Court.

---

1. This Court reversed only the damage awards as to the state law claims of nuisance, trespass, negligence, negligence *per se* and punitive damages, but upheld the district court's monetary judgment on the Georgia Hazardous Site Response Act contribution and attorney's fees. Parker, 386 F.3d at 1019, footnote 35.

4

On December 13, 2005, the district court entered an order denying the plaintiff's motion to show cause. The district court reasoned: (1) under RCRA, defendants are deemed to have a permit-by-rule and do not need any other solid waste handling permits; and (2) under the CWA, plaintiffs failed to provide clear and convincing evidence that defendants were in violation of the district court's order to develop and implement a legally sufficient SWPPP.

The district court also declined to exercise subject-matter jurisdiction over the new trial on damages, dismissing the action without prejudice, so it could be refiled in Georgia State Court. This appeal followed.

## II. STANDARD OF REVIEW

There are three issues presented on appeal:

I. Whether the district court erred in denying plaintiff's motion to show cause as to why defendant had not obtained a solid waste handling permit.

II. Whether the district court erred in denying plaintiff's motion to show cause as to why defendant had not implemented a legally sufficient Storm Water Pollution Prevention Plan.

III. Whether the district court erred in declining to exercise supplemental jurisdiction over the new trial on damages.

We review the district court's denial of the plaintiff's motion to show cause for abuse of discretion. In re Newton, 718 F.2d 1015, 1022 (11th Cir. 1983); United States v. Hayes, 722 F.2d 723, 725 (11th Cir. 1984). A defendant's present ability to comply with a court order is subject to the clearly erroneous standard of review. United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988); Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991); Combs v. Ryan's Coal Co., Inc., 785 F.2d 970, 983 (11th Cir. 1986); Fed.R.Civ.P. 52(a).

We review the district court's decision not to exercise supplemental jurisdiction for abuse of discretion. Ingram v. School Bd. of Miami-Dade County, 167 Fed.Appx. 107, 108 (11th Cir. 2006) (*citing* Lucero v. Trosch, 121 F.3d 591, 598 (11th Cir. 1997) ("As a practical matter, the district court is in the best position to weigh the competing interests set forth in § 1367(c) and [United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct 1130, 16 L.Ed.2d 218 (1966)] in deciding whether it is appropriate to exercise supplemental jurisdiction.")). Both parties agree that the district court had power to exercise subject-matter jurisdiction under 28 U.S.C. § 1367(a).

## III. ANALYSIS

Plaintiff argues the district court erred when it denied plaintiff's motion to show cause as to why defendant should not be held in contempt for violating the

6

district court's order to obtain a solid waste handling permit, and to implement a legally sufficient SWPPP. Plaintiff further argues the district court erred when it dismissed plaintiff's case. We consider each of these issues in turn.

**A. Solid Waste Handling Permit**

On August 8, 2003, the district court found defendant in violation of the RCRA, and ordered that defendant take "all reasonable steps to obtain a solid waste handling permit from the director of the EPD." On appeal, this Court upheld the district court's finding of liability under the RCRA and affirmed the district court's order requiring the obtaining of a solid waste handling permit. Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1012 (11th Cir. 2004). Because we concluded in that case the defendant must apply for and obtain a solid waste handling permit, we now briefly review the analysis for that decision.

The RCRA allows approved states to implement and enforce its provisions. 42 U.S.C.A. § 6926(b). Georgia received approval to do so in 1979, and enacted the Comprehensive Solid Waste Management Act ("SWMA"), Ga. Code Ann. §§ 12-8-20 through 12-8-59.2, to regulate solid and hazardous waste. Under the SWMA, a person generally must obtain a permit to handle solid waste. Parker, 386 F.3d at 1011, citing Ga. Code. Ann. § 12-8-24.

Because the scrap metal and other materials on defendant's property were found to be within Georgia's broad definition of solid waste, defendant was required to have a solid waste handling permit unless an exception to the permit requirement applied. Parker, 386 F.3d at 1011. Defendant contended the materials on the property were actually "recovered materials,"[2] making the SMP facility a "recovered materials processing facility,"[3] eliminating the need for a solid waste handling permit because the SWMA excludes recovered materials from the definition of solid waste. Ga. Code Ann. § 12-8-22(33); Ga. Comp. R. & Regs. r. 391-3-4-.04(7)(a).

However, even "recovered materials," require a solid waste handling permit if they are "accumulated speculatively." Parker, 386 F.3d at 1012, *citing* Ga. Comp. R. & Regs. r. 391-3-4-.04(7)(b). To prove materials are not accumulated speculatively, defendant would have to show "during the preceding 90 days the amount of material that is recycled, sold, used, or reused equals at least 60 percent by weight or volume of the material received during that 90-day period and 60

2. "'Recovered Materials' means those materials which have known use, reuse, or recycling potential; can be feasibly used, reused or recycled; and have been diverted or removed from the solid waste stream for sale, use reuse, or recycling, whether or not requiring subsequent separation and processing." Ga. Comp. R. & Regs. r. 391-3-4-.01(55).

3. A "recovered materials processing facility" is "a facility engaged solely in the storage, processing, and resale or reuse of recovered materials." Ga. Comp. R. & Regs. r. 391-3-4-.01(56).

8

percent by weight or volume of all material previously (sic) received and not recycled, sold, used, or reused and carried forward into that 90-day period." Ga. Comp. R. & Regs. r. 391-3-4-.04(7)(c). The district court found, and this Court upheld, defendant's waste was accumulated speculatively and must comply with all applicable regulations, which include applying for and obtaining a solid waste handling permit. Parker, 386 F.3d at 1012.

On a contempt motion, the movant bears the initial burden of proving, by clear and convincing evidence, the defendant's noncompliance with a court order. United States v. Roberts, 858 F.2d 698, 700 (11th Cir. 1988). In the instant case, plaintiff showed that there is no record the defendant has either applied or has attempted to apply for a solid waste handling permit with the EPD.

Once the movant makes a prima facie showing of a violation, the burden shifts to the alleged contemnor to produce detailed evidence specifically explaining why he cannot comply. Roberts, 858 F.2d at 701, citingUnited States v. Rylander, 460 U.S. 752, 755, 103 S.Ct. 1548, 1551, 75 L.Ed.2d 521 (1983). The burden of production is not satisfied by a mere assertion of inability. United States v. Hayes, 722 F.2d 723 (11th Cir. 1984). Defendant argues they are covered by a permit-by-rule, pursuant to GA. Comp. R. & Regs. r. 391-3-4-.06.

9

Defendant further argues that the EPD acknowledged this fact, and thus, no solid waste handling permit is required. We disagree.

A permit-by-rule is not sufficient if materials are accumulated speculatively. Ga. Comp. R. & Regs. r. 391-3-4-.04(7)(b). In its argument, defendant relies on two letters from the Program Manager of the EPD's Solid Waste Management Program, Harold C. Gillespie, and on an affidavit from EPD employee, Michael Rodock. We consider each of these items in turn.

The first letter from Mr. Gillespie, dated July 28, 2003,[4] indicates that "[i]f [defendant is] only engaged in the collection or handling of recyclable materials, like metals... I am not aware of any other permits that would be required..." Not only does this letter ignore the issue of whether materials are "accumulated speculatively" on defendant's property, it also predates the district court's order. It does not negate that the district court and this Court found that materials are accumulated speculatively, nor does it overrule this Court's order to obtain a solid waste handling permit.

Mr. Gillespie's second letter is dated November 14, 2003. It states that it is a follow-up to his letter of July 28. It provides, in pertinent part, "My [July 28] response was solely based upon the information provided in your July 23, 2003

---

4. Eleven days before the district court's August 8 order to obtain a solid waste handling permit.

10

letter *and did not address the possibility that recovered materials may be accumulated speculatively or disposed of at your facility*. In such cases, recovered materials are considered solid waste and *a solid waste handling permit is required*" (emphasis added). This letter clearly states that if recovered materials are accumulated speculatively, a solid waste handling permit is required. Thus, because the district court and this Court both found that materials are accumulated speculatively, defendant must obtain a solid waste handling permit.

The next piece of evidence defendant points to is an affidavit by Michael Rodock, the EPD employee responsible for inspecting facilities to determine what type of permit, if any, the facility requires. Mr. Rodock's affidavit provides "[defendant's] [f]acility has been deemed to have a solid waste handling permit-by-rule... [defendant's] permitting status is reflected in correspondence from EPD dated November 14, 2003, July, 28, 2003... and no other solid waste handling permit is necessary." It further provides Mr. Rodock "visited the [f]acility on October 6, 2005... [and] [i]t does not appear that there are recovered materials accumulated speculatively or disposed at the [f]acility." In consideration of this affidavit, the district court found that defendant was covered by a permit-by-rule, and application for a solid waste handling permit was not necessary.

Appellate courts have the power to issue mandates which are commands that cannot be ignored. Absent a Supreme Court decision to the contrary, district courts are compelled to follow mandates of appellate courts. Litman v. Massachusetts Mutual Life Insurance Company, 825 F.2d 1506, 1508 (11th Cir. 1987) (*citing* In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895); Sibbald v. United States, 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838)). "A district court when acting under an appellate court's mandate, cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." Id. At 1510-1511, (*citing* In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895); Sibbald v. United States, 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838)) (internal quotes omitted).

In the instant case, this Court affirmed the finding that recovered materials were being accumulated speculatively, and issued a mandate ordering defendant to obtain a solid waste handling permit. It is not within the district court's power to second guess its or this Court's conclusion or revise this Court's order. The fact that Mr. Rodock disagrees with this conclusion is irrelevant, even though he is an

EPD employee.[5]  This Court's order to obtain a solid waste handling permit still stands, and neither the district court nor the defendant is permitted to ignore or modify that order.  Thus, we conclude the district court abused its discretion in denying plaintiff's motion to show cause and finding that defendant was not required to seek a solid waste handling permit.[6]

**B. Storm Water Pollution Prevention Plan**

On August 8, 2003, after finding defendant liable under the CWA, the district court ordered the defendant to develop and implement a legally sufficient Storm Water Pollution Prevention Plan.  This Court affirmed that order in Parker, 386 F.3d at 1010.

As stated previously, on a motion to show cause the movant bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors are in violation of a court order.  Reynolds v. Alabama Dept. of Transp., 10 F.Supp.2d 1263, 1273 (M.D. Ala. 1998) (*citing* U.S. v. Roberts, 858 F.2d 698, 700 (11th Cir. 1988)); Laitram Corp. V. Cambridge Wire Cloth Co., 863 F.2d 855, 867

---

5. Plaintiff also alleges that defendant did not follow the proper procedure to obtain a permit-by-rule for the SMP facility.  As this is not material to our analysis, we do not reach this issue.

6. We recognize the possibility that the activity conducted on the defendant's property may have changed.  This would require specific findings by the district court and would not eliminate any period of contempt between the order requiring defendant to obtain a solid waste handling permit and the elimination of the activity giving rise to the order.

(C.A. Fed. 1988); United States v. Hayes, 722 F.2d 723, 725 (11th Cir. 1984) (*citing* Northside Realty Associates v. United States, 605 F.2d 1348, 1352 (5th Cir. 1979). In its December 13, 2005 order, the district court found that plaintiffs did not produce clear and convincing evidence that defendant had violated of the district court's order to develop and implement a legally sufficient SWPPP.

The district court relied upon a November 3, 2005 affidavit of Jason Maddox, president of SMP and son of defendant J. Wayne Maddox, in reaching its decision. The Maddox affidavit explains that defendant has not been able to construct a storm water detention pond as per the SWPPP, due to financial constraints. Such constraints include legal fees to cover litigation as well as the inability of SMP and J. Wayne Maddox to procure loans due to this litigation.

Jason Maddox's affidavit also describes defendant's efforts to implement the SWPPP. SMP has constructed a curb around the perimeter of its property and pumps collected storm water as necessary until it can afford to construct the required storm water detention pond, which it estimated to occur within 30-90 days of the affidavit. Plaintiff offers no evidence to the contrary. The facts that defendant has constructed a curb and is pumping storm water as necessary show there has been an effort to comply with the court order. We do not believe defendant's failure to construct a storm water detention pond as of the show cause

14

hearing is enough to provide clear and convincing evidence that the defendant violated a court order.[7]

Based upon the record, we conclude the district court did not abuse its discretion when it found no violation of its order requiring the defendant to implement a legally sufficient SWPPP. However, given that nearly a year has passed since the district court's ruling, this is without prejudice to the matter being revisited upon proper motion.

## C. Subject-Matter Jurisdiction

The district court has original jurisdiction over plaintiff's claims under the RCRA and CWA pursuant to 28 U.S.C. § 1331.[8] Jurisdiction over the remaining state law claims comes under the doctrine of supplemental or pendent jurisdiction outlined in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966), and codified in 28 U.S.C. § 1367.[9] The statute reflects a dichotomy

---

7. Plaintiff's brief cites to various case law stating a self-induced inability to comply with a court order is not a valid defense to contempt. Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 506 (8th Cir. 2000); In re Power Recovery Sys., Inc., 950 F.2d 798, 803 (1st Cir. 1991); Federal Trade Commission v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999). Under the facts of this case, we find this law inapplicable.

8. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331

9. " Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the

15

between a district court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c).  Lucero v. Trosch, 121 F.3d 591, 597 (11th Cir. 1997); Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559. 1563 (11th Cir. 1994).  Section 1367(a) authorizes a court to hear supplemental claims to the full extent allowed by the "case or controversy" standard of Article III of the Constitution.  Palmer, 22 F.3d at 1566.  The constitutional "case or controversy" standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim.  United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); Palmer, 22 F.3d at 1563-64 (a federal court has the power under section 1367(a) to exercise pendent jurisdiction over state claims which arise from the same occurrence and involve the same or similar evidence); L.A. Draper and Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 427 (11th Cir. 1984) (a federal court may exercise pendent jurisdiction over state law claims deriving from a common nucleus of operative fact with a substantial federal claim).

---

action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

In this case, the RCRA and CWA claims are the "substantial federal claims," and they arise out of a common nucleus of operative fact as the state claims, namely, SMP's operation of a junkyard adjacent to the Parker property. Therefore, the district court has power to exercise supplemental jurisdiction over plaintiff's state law claims. Neither party disagrees with this conclusion. The issue before the Court is whether the district court had discretion not to exercise supplemental jurisdiction over the new trial on damages pursuant to section 1367(c). The district court has such discretion in four situations:

(1) the claim raises a novel or complex issue of state law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction

Whenever a federal court has supplemental jurisdiction under section 1367(a), that jurisdiction should be exercised unless section 1367(b) or (c) applies.[10] Palmer, 22 F.3d at 1569. Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims. Id. We now consider each of the four section 1367(c) factors in turn.

_____

10. Section 1367(b) does not apply in this case, as it deals with diversity jurisdiction under 28 U.S.C. § 1332.

17

## 1. Novel or Complex Issue of State Law

The district court found that this case raises novel or complex issues of state law. The district court reasoned the state law issues are novel and complex because it was reversed in this Court's prior decision, and because the parties have filed new motions pertaining to Georgia state law. The issues the district court refers to are a motion to invalidate fraudulent transfers under Georgia's Uniform Fraudulent Transfer Act, O.C.G.A. §§ 18-2-70, *et seq.*, and plaintiff's request to have the district court appoint a receiver pursuant to O.C.G.A. § 18-2-77(3)(B), and O.C.G.A. § 9-8-3. However, because plaintiff has agreed not to seek these remedies in the district court, we do not reach the issue of whether these motions raise issues of novel or complex state law. (Plaintiff's Brief at 39). Therefore, we look only at the new trial on damages to see if it raises novel or complex issues of state law.

Generally, state tort claims are not considered novel or complex. *See, e.g.*, Myers v. Richland County, 288 F.Supp.2d 1013, 1018 (D.N.D. 2003) (holding breach of contract, defamation, and intentional infliction of emotional distress claims did not raise novel or complex issues of state law); Holland v. O'Bryant, 964 F.Supp. 4, 7 (D.D.C. 1997) (holding false imprisonment, false arrest, intentional infliction of emotional distress, assault and battery, and invasion of

18

privacy do not raise novel or complex issues of state law); <u>Yeager v. Norwest Multifamily, Inc.</u>, 865 F.Supp. 768, 771(M.D. Ala. 1994) (holding assault and battery claims do not raise novel or complex issues of state law). Moreover, negligence, nuisance, and property damage claims have been held as not raising novel or complex issues of state law. <u>INX Intern. Ink Co. v. Delphi Energy & Engine Management Systems</u>, 943 F.Supp 993, 997 (E.D. Wis. 1996).

Neither the district court nor the defendant cite to any authority holding the state law claims in this case: negligence, negligence per se, nuisance, and trespass, are considered novel or complex by a federal court. Moreover, neither the district court nor the defendant cite to any authority holding a trial on damages alone, after liability has been determined, raises novel or complex issues of state law. Because this case involves only state tort claims and liability has already been determined, we conclude a new trial on damages does not raise novel or complex issues of state law.

## 2. State Claim Substantially Predominates Over Federal Claims

The district court also found the new trial on damages substantially predominates over the claims over which it had original jurisdiction, because all the federal claims have been resolved. "A federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case,

19

to which the federal claim is only an appendage." McNerny v. Nebraska Public Power Dist., 309 F.Supp.2d 1109, 1117-18 (D. Neb. 2004), (*citing* De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3rd Cir. 2003) (*quoting* Gibbs, 383 U.S. at 727, 86 S.Ct. at 1140)) (internal quotes omitted).

In L.A. Draper & Son v. Wheelabrator-Frye, Inc., this Court held "[o]nce the district court had a directed verdict against the [federal] claims, it had only the state claims left to consider; as would of course be true in any case in which the federal claims are insufficient to create a jury issue. This predominance of the state claim, by itself, is not determinative; the federal claims can drop out of the case after trial yet dismissal of pendent state claims nevertheless might be an abuse of discretion." 735 F.2d 414, 428-29 (11th Cir. 1984).

In the instant case, the federal claims did not "drop out" after trial, but were resolved in favor of the plaintiff, just as the state claims were. We find this case even stronger than L.A. Draper. Here the federal claims have been resolved in favor of the plaintiff- they have not dropped out of the case. Neither the district court nor the defendant cite any authority holding that when all federal claims are resolved in favor of the plaintiff, the plaintiff's remaining state law claims predominate and can be dismissed.

In light of L.A. Draper, and because liability has already been determined with regard to all claims, we conclude that the new trial on state law damages does not substantially predominate over the federal claims.

**3. Dismissal of All Claims of Original Jurisdiction**

The district court found that 28 U.S.C. § 1367(c)(3) allowed dismissal of the plaintiff's new trial on damages. The district court reasoned that even though the statute reads that when "the district court has *dismissed* all claims over which it has original jurisdiction," Id. (emphasis added), it applies in this case because "judgement has been entered on [the federal claims] and they are no longer the subject of this proceeding." We disagree.

A plain reading of the word "dismissed" in section 1367(c)(3) does not include when all federal claims have been tried and resolved in favor of the plaintiff. We can find no authority so holding. The defendant erroneously cites Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350. 108 S.Ct. 614, 619 (1988). Not only was this case decided before supplemental jurisdiction was codified, but the only reference to what would become section 1367(c)(3) states "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Id. (*citing* Gibbs, 383 U.S.

21

at 726-727, 86 S.Ct. at 1139) (footnote omitted).  In the instant case, the federal claims were tried and resolved in favor of the plaintiff, and did not drop out of the lawsuit in its early stages.

Defendant also cites Lake County v. NRG/Recovery Group, Inc., 144 F.Supp.2d 1316, 1319 (M.D. Fla. 2001) (remand to state court was appropriate where plaintiff's amended complaint did not include any federal claims); Carr v. Tatangelo, 156 F.supp.2d 1369, 1380 (M.D. Ga. 2001) (declining to exercise supplemental jurisdiction over state claims after federal claims had been dismissed); Hicks v. Moore, 422 F.3d 1246 (11th Cir. 2005) (after granting summary judgment on all federal claims in favor of defendant, this Court noted the district court's discretion whether to remand plaintiff's state law claims to state court)[11]; Murphy v. Florida Keys Elec. Co-op. Ass'n, Inc., 329 F.3d 1311 (11th Cir. 2003) (affirming summary judgment of defendant's contribution claim in favor of third-party defendant, and dismissing third-party defendant's state law counterclaim to state court, as per third-party defendant's preference); Hardy v. Birmingham Bd. of Educ., 954 F.2d 1546 (11th Cir. 1992) (dismissing state claims of first impression after all federal claims had been dismissed).  None of these

---

11.  Contrary to defense counsel's brief, the plaintiff's federal claims were not affirmed in this case.  It is disappointing when a party misrepresents the holding in a case that could be binding authority over this decision.

decisions involve state law claims dismissed against a party's preference after the federal claims had been tried and resolved in that party's favor. Thus, none of these decisions provide support for the district court's dismissal. Under the peculiar facts of this case, we conclude that the district court abused its discretion in dismissing the case under section 1367(c)(3).

**4. Other Exceptional Circumstances or Compelling Reasons for Declining Jurisdiction**

The Gibbs factors of judicial economy, convenience, fairness to the parties, and whether all claims would be expected to be tried together are evaluated under section 1367(c)(4). The district court found these factors weigh in favor of dismissing the case to state court. We address each factor in turn.

**I. Judicial Economy**

The district court found that judicial economy would best be served by dismissing the case to state court because "[the district court] can foresee that in a second trial it will again be called upon to make numerous rulings on strictly Georgia law, and that it could very well again make a mistake which must again be corrected by the Eleventh Circuit on a second appeal." Apprehension of being reversed on appeal is not a valid reason to dismiss a case for lack of subject matter jurisdiction. The district court did not cite any authority to the contrary. Indeed,

the policy of supplemental jurisdiction is to support the conservation of judicial energy and avoid multiplicity in litigation. Rosado v. Wyman, 397 U.S. 397, 405, 90 S.Ct. 1207, 1214 (1970). Having a state court rehash issues that have already been argued in federal court is far more likely to cause multiplicity in litigation than the possibility of a future reversal in this case.

Other courts have held that a court should retain jurisdiction over state law claims "where substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." Graf v. Elgin, Joliet and Eastern Ry. Co., 790 F.2d 1341, 1347-1348 (7th Cir. 1986). This case was originally filed on April 4, 2002. There has been a four day jury trial, as well as two pretrial hearings. There have been two appeals, both heard on oral argument before this Court. The district court has handed down 18 orders, ruling on more than 40 motions. Clearly, substantial judicial resources have already been committed to the resolution of this case. As such, this case should not be dismissed in the interest of judicial economy.

**ii. Convenience**

The district court also found that convenience to the parties would favor dismissal given that the parties have to travel from Newton County to Atlanta to try the case in federal court. However, the distance from the property in question

to the federal courthouse in Atlanta is a mere 36 miles. J. Wayne Maddox and Jason Maddox are the only witnesses listed by the defendant, and plaintiffs are prepared to have their witnesses endure the trek to Atlanta. Accordingly we conclude any inconvenience would be minor and would not rise to the level of "exceptional reasons or compelling circumstances" described in 28 U.S.C. § 1367(c)(4).

### iii. Fairness to the Parties

The district court also found that fairness to the parties would be served by dismissing the new trial on damages to state court. Plaintiffs argued it would be unfair at this stage of the proceedings to require them to start over in state court. Instead of analyzing why this is not the case, however, the district court explains "having to retry this case in state court must be considered together with the part that [plaintiff's] counsel played in the need to retry the case... the court charged the jury [in the first trial] *as it was requested to do by the plaintiffs*." Since the obligation of ruling on the propriety of jury instructions rests solely with the trial judge, we find this a strange basis for dismissing a case.

Furthermore, because plaintiff has prevailed in federal court as to both federal and state law claims, we conclude that fairness to the parties dictates that the district court complete the case by handling the new trial on damages.

**iv. Whether All Claims Would be Expected to be Tried Together**

Although not addressed by the district court, we now consider whether all claims in this case would be expected to be tried together.  The exercise of supplemental jurisdiction in federal environmental claims, such as RCRA and CERCLA claims, is favored.  Green Hills (USA), L.L.C. v. Aaron Streit, Inc., 361 F.Supp.2d 81, 88 (E.D. N.Y. 2005); Raytheon Co. v. Mcgraw-Edison Co., Inc., 979 F.Supp. 858, 866 (*citing* INX Intern. Ink Co. v. Delphi Energy & Engine Management Systems, 943 F.Supp 993 (E.D. Wis. 1996)).  Courts have found that federal environmental and state nuisance claims derive from a common nucleus of operative facts and the plaintiff would ordinarily be expected to try them all in one proceeding.  See State of N.Y. v. Shore Realty Corp., 759 F.2d 1032, 1050 (2d Cir. 1985) (*citing* Gibbs, 383 U.S. at 728, 86 S.Ct. At 1140).  Indeed, all the facts in this case derive from the same nucleus of operative facts, specifically, the operation of a junkyard adjacent to the Parker property, and plaintiff clearly expects to have all claims tried together in federal court.  We conclude plaintiff's expectation to resolve all claims together weighs in favor of retaining supplemental jurisdiction over plaintiff's state law claims.

Therefore, because the district court had the power to exercise supplemental jurisdiction over plaintiff's state law claims, and because none of the factors

26

enumerated in 28 U.S.C. 1367(c) are persuasively present, we conclude the district court abused its discretion when it dismissed the case for lack of subject-matter jurisdiction. The district court's order is vacated and it is instructed to hold the new trial on damages as set forth in our earlier decision.

## IV. CONCLUSION

Accordingly, we vacate and reverse the dismissal for lack of subject-matter jurisdiction and remand for a new trial on damages in the district court. We reverse the denial of the motion to show cause as to the solid waste handling permit. We affirm, without prejudice, the denial of the motion to show cause as to the Storm Water Pollution Prevention Plan.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**