Quentin HOLLAND, et al., Plaintiff,

v.

George F. O'BRYANT, Jr., et al., Defendant.

Civil Action No. 96–00997.

United States District Court, District of Columbia.

May 1, 1997.

---

Marvin Leonard Szymkowicz, Mendelsohn & Szymkowicz, Washington, DC, Christopher Alan Hostage, Reed & Hostage, P.C., Washington, DC, for Plaintiffs.

Thomas L. Koger, Office of Corporation Counsel, Washington, DC, for Defendants.

### MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment and Defendants Gibson and O'Bryant's Motion for Partial Summary Judgment. The Court has considered the motions and the opposition thereto and heard argument on April 25, 1997.

### BACKGROUND

During December 1995, members of the 6th Metropolitan Police Department District ("6th MPD District") received information that crack cocaine was being sold from premises at 3972 Blaine Street, N.E. in Washington, D.C. After a confidential source (the "CS") allegedly made a controlled buy of illegal drugs on the premises, Investigator O'Bryant, a Defendant in this case, applied for and obtained a search warrant for the premises. Officers of the 6th MPD District executed the search warrant on February 2, 1996 and found a .25 calibre semi-automatic pistol, but no illegal drugs.

Following the execution of the search warrant at 3972 Blaine Street, N.E., Lieutenant Gibson, another Defendant in this case, received a number of phone calls advising him that illegal drugs were being sold at several locations in the same neighborhood, including the premises of 3973 Blaine Street, N.E. Defendant O'Bryant then asked the CS whether he had any information regarding such activities at that address. The CS advised O'Bryant that while he had no information concerning 3973 Blaine Street, N.E. at that time, he would look into the matter. Allegedly, the CS subsequently reported that he had entered the back door of premises that he identified as 3973 Blaine Street, N.E. and had observed large, white rocks of a substance which he recognized to be crack cocaine. Defendant O'Bryant allegedly confirmed the identification of the premises which the CS had visited, and prepared an affidavit (the "O'Bryant Affidavit"). The O'Bryant Affidavit, which identified 3973 Blaine Street, N.E. as a "cut house stash" (i.e. a facility where crack cocaine is stored and processed), served as the basis for a search warrant for the premises obtained by the officers of the 6th MPD District.

Defendants Gibson and O'Bryant were each members of a team of approximately 18 officers from the 6th MPD District who executed the search warrant at 3973 Blaine Street, N.E. on February 16, 1996. At 6:30 p.m. the police team made a forcible entry, busting down the front door. During the course of the execution of the search warrant, Plaintiff Quentin A. Holland, was searched and allegedly held at gun point. Plaintiffs' Amended Complaint states that "the entire house was ransacked, drawers pulled out and dumped on the floor, an upstairs window was broken [and] furniture was moved and overturned." Amended Complaint ¶ 15. The officers of the 6th MPD District found no contraband during the search and Plaintiff Quentin A. Holland has proffered that he is not and has never been involved in the distribution of illegal drugs. The physical layout of 3973 Blaine Street, N.E. and the description of the premises included in the O'Bryant Affidavit were inconsistent in several respects.[1]

1. The O'Bryant Affidavit identified Plaintiffs' residence as having a gray front door and a silver screen door when the front door was actually black and the screen door was white metal. Defendant O'Bryant also allegedly prepared a diagram of 3973 Blaine Street, N.E. showing a chain link fence running the along the east side of the property when there was no such fence. See Plaintiffs' Statement of Material Facts Genuinely at Issue, ¶¶ 9–11.

Plaintiffs filed their Amended Complaint in this case on February 24, 1997. In the Amended Complaint, Plaintiffs allege violations of 42 U.S.C. § 1983 by Defendants Gibson and O'Bryant, and made common law tort claims against Defendant District of Columbia.[2]

Plaintiffs now move for summary judgment, arguing that they have made out a *prima facie* case of liability under 42 U.S.C. § 1983 with respect to Defendant O'Bryant on Count I of the Amended Complaint. Defendants Gibson and O'Bryant move for summary judgment on Plaintiffs' § 1983 claim, arguing that they acted reasonably and are entitled to qualified immunity. Trial is scheduled to commence in this case on June 2, 1997 at 10 a.m.

## SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court outlined the standards governing summary judgment:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1.

> Rule 56 must be construed with due regard not only for the rights of the persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555 (citation omitted).

It is the function of the district court to determine whether any pertinent factual controversy actually exists. *Exxon Corp. v. Federal Trade Commission*, 663 F.2d 120 (D.C.Cir.1980). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987) (per curiam). Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment. Fed.R.Civ.P. 56(e). In reviewing the record all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The inferences must be reasonable, however, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993).

## ANALYSIS

■ It would be premature to grant summary judgment for either party at this time with respect to Plaintiffs' claims under 42 U.S.C. § 1983. This is a fact driven case and a number of significant facts remain in dispute. The issue is not limited to the lawfulness of the entry into the premises. Once entry had been made and the premises were secured, the question arises as to whether there came a point where the police should have realized "oops" they made a mistake. As much as this nation wants to win the war on drugs, it would be counter-productive if the price that must be paid would be to turn this nation into a police state. As the police become more aggressive, the individual rights under the Bill of Rights must stand tall to deter over-reaching police authorities. Plaintiffs must be given the opportunity to fully develop the facts they allege so that the

---

**2.** In particular, Plaintiffs have made common law tort claims for False Imprisonment, False Arrest, Intentional Infliction of Emotional Distress, Assault and Battery and Invasion of Privacy.

trier of fact can determine whether their rights were violated and, if so, whether they are entitled to redress.

Defendants' counsel has indicated that his clients might want to interlocutorily appeal a denial of qualified immunity for his clients before Plaintiffs' § 1983 claims are tried. Even if the Defendants elect to follow that course of action, there is a more than an adequate basis to proceed to trial on Plaintiffs' common law claims.

■ Jurisdiction resides in this court with respect to Plaintiffs' common law claims under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367(a) (Supp.1993). Concededly this case raises legitimate Federal questions and the common law claims form "part of the same case or controversy." Whether to decide the common law claims is a matter left to the sound discretion of the court, guided by consideration of the factors enumerated in 28 U.S.C. § 1367(c). This provision gives discretion to district courts on whether to exercise supplemental jurisdiction. It essentially codifies the leading decision on pendent (now "supplemental") jurisdiction, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) and sets forth the circumstances under which a Federal court may decline to hear a plaintiff's common law cause of action:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) The claim raises a novel or complex issue of State law,

(2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) The district court has dismissed all claims over which it has original jurisdiction, or

(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). *Gibbs* provides the framework in which these factors are to be considered, mentioning judicial economy, convenience, fairness and comity as relevant. 383 U.S. at 726, 86 S.Ct. at 1139. Even if a plaintiff is unable to prevail on the Federal cause of action, the court still has jurisdiction over a properly joined common law claim if a plaintiff's cause of action meets the *Gibbs* test.

■ The Court finds that an analysis of § 1367(c) calls for deciding Plaintiffs' common law claims even if the § 1983 claims are on interlocutory appeal. This case raises no novel or complex issue of law, and the Court has not dismissed Plaintiffs' § 1983 claims.

None of the bases for declining to exercise supplemental jurisdiction is compelling. Instead, there are compelling reasons for proceeding to trial on the common law claims, at the very least, at the earliest possible time.

The victims in this case are entitled to a swift resolution of their claims. This is a case where the police broke down the door to Plaintiffs' home, tossed Plaintiffs' belongings all over the premises while allegedly holding Plaintiff Quentin A. Holland at gunpoint.[3] To date, there has been no payment compensating Plaintiffs for the damage to their property or for any other putative injury. Plaintiffs have suffered substantial property damage and, allegedly serious personal injuries.

There is no question the police, in discharging their extremely important responsibilities, have the right to be reasonably aggressive with the understanding at times they might make a mistake. While police authorities have the right to be wrong, when

---

3. So far there is no evidence to show that the police were venal in their actions. Instead, they acted more like Inspector Clouseau. Prior to entry into the house in this case, the police had come up with a "dry hole" in an earlier search. The case here was the second unsuccessful attempt. After this debacle, the police obtained a warrant for the search of yet another house on the street. However, prior to entry the police discovered it was the wrong house and finally realized that the alleged cache of drugs was at still another house. The police entered the other house and while they realized they finally hit "pay dirt" their entry was, in fact, warrantless. The police have to review their procedures to make sure these kinds of mistakes do not recur. Indeed, the police in this case may have taken Inspector Clouseau's antics to new heights.

they are wrong they can't simply walk away from the carnage they have caused.

Here we have totally innocent citizens whose home was mistakenly invaded and ransacked by police. Defendants Gibson and O'Bryant have stated that they might exercise their right to appeal this court's denial of their right to qualified immunity. If an interlocutory appeal is taken, to avoid any undue delay, the case will proceed on the common law causes of action.

At some point after entry on the premises, the police should have realized they had invaded the wrong house and that they had wrongly damaged the premises. The police persist in denying Plaintiffs' right to recover full compensation for the injuries they inflicted on the Plaintiffs [4] To delay the trial of this case until there has been an appellate determination of Defendants' invocation of qualified immunity would cause a further injustice to these wronged citizens.

### CONCLUSION

Plaintiffs motion for partial summary judgment will be denied. Defendants Gibson and O'Bryant's motion for partial summary judgment will also be denied. This case will proceed to trial on June 2, 1997. An appropriate order is attached hereto.

### *ORDER*

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment and Defendants Gibson and O'Bryant's Motion for Partial Summary Judgment. The Court has considered the motions and the opposition thereto and heard argument on April 25, 1997. For the reasons cited in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **DENIED**; and it is

**FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment is **DENIED**; and it is

4. Plaintiff Quentin A. Holland was in the house alone at the time the police executed the search

**FURTHER ORDERED** that this case will proceed to trial on June 2, 1997 at 10 a.m.

warrant on February 16, 1996. His family was across the street viewing what was transpiring.