**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 25-11913
Non-Argument Calendar
_____

PRESTON JERMAIN LEWIS,

*Plaintiff-Appellant,*

*versus*

ALDI INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:24-cv-00622-TKW-ZCB

_____

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Preston Lewis, proceeding pro se, appeals the District Court's sua sponte dismissal of his claims and its denial of his motion for recusal. We affirm.

## I.

Lewis alleged that an ALDI employee, Kathleen Mary Bridgman, denied him service twice in 2024 on account of his race and disability.[1] The first time, Bridgman called a manager, and the manager ultimately had another employee serve Lewis. The second time, Bridgman called another employee, who also refused to serve Lewis, stating that Lewis was yelling and being aggressive. According to Lewis, another customer then approached him, yelled at him to deal with it or leave, and pulled his shirt. In response, Lewis pushed the customer away and yelled for someone to call the police.

Officers, including Sheriff Sherri Leann Stovall, arrived. According to Lewis, other customers gave Stovall an account of what happened that matched Lewis's version of events, but Stovall hurried them out of the store without writing down their statements. Stovall then asked Lewis for his identification. Lewis refused and walked away. At this point, officers grabbed Lewis and pushed him to his knees with his head and neck to the floor. They handcuffed him and put their knees on his back and neck. Lewis sustained injuries, and he told the officers that he had a disability and that he could not breathe. One of the officers then pulled Lewis up to his feet and told him to sit on a bench.

---

[1] All facts are taken from Lewis's amended complaint, as he alleges them.

Officer Ramirez Badge 213[2] then told Lewis that they were responding to a 911 call about a fight and that Lewis fit the description of a person involved. Ramirez also read Lewis his *Miranda*[3] rights. After Lewis stated that he wanted his lawyer, Ramirez told him he would go to jail if a witness made an incriminating statement about him.

Lewis complained that his handcuffs were too tight and that his arms were numb. He also told the officers that he had a pending civil rights complaint against the Santa Rosa County Sheriff's Office. Officers then tightened his handcuffs. Lewis tried to get his phone from his pocket, and the officers reacted as if he were reaching for a weapon.

At some point, Sherriff Stovall reviewed a surveillance video of the fight and stated that it showed that Lewis was the initial aggressor. The other customer declined to press charges, but ALDI decided to trespass Lewis from the store. Officers gave Lewis the trespassing papers and told him to leave the store.

When Lewis got to his truck, an officer told him to exit the truck and that he would be arrested for driving without a license if he tried to drive it. Lewis presented his driver's license, and the officer told him to leave the parking lot and leave his car behind. Two officers then parked their cars in front of Lewis's truck until someone arrived to move it.

---

[2] This is the name Lewis used in his amended complaint.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Lewis filed suit. In his amended complaint in forma pauperis, Lewis brought claims against ALDI for violating the Americans with Disabilities Act (ADA), for negligence, and for premises liability. He also brought claims against the Santa Rosa County Sheriff's Office (Office), Santa Rosa County Board of Commissioners (Board), Sheriff Stovall, and Officer Ramirez for violating his Fourth[4] and Fifth Amendment rights. And, finally, he brought a claim against Stovall and Ramirez for violating the ADA.[5] He requested money damages and injunctive relief.

The Magistrate Judge issued a report and recommendation (R&R) to sua sponte dismiss Lewis's federal claims because Lewis failed to state plausible claims for relief. He stated that the ADA

---

[4] Lewis titled this claim "14th Amendment violation" and stated that the detention violated the "procedural due process rights guaranteed by the fourteenth amendment and incorporated fourth amendment protections." However, the Magistrate Judge's report and recommendation stated that it did not appear that Lewis intended to bring a Fourteenth Amendment claim and that, even if he did, it would be dismissed for failure to state a claim upon which relief can be granted as the "factual allegations provide no basis for believing that any Defendants violated the Fourteenth Amendment." Lewis did not address this issue on appeal, so any argument to the contrary is abandoned. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." (emphasis removed) (internal citations removed)). We, thus, treat his claim as only a Fourth Amendment claim.

[5] All claims against the officers were brought against them in their individual and official capacities.

25-11913              Opinion of the Court                    5

claim against ALDI for money damages failed because the only re-
lief available under Title III of the ADA is injunctive relief.[6] He also
stated that the ADA claim against ALDI for injunctive relief failed
because Lewis had not shown a threat of future violation of the
ADA. The claims against the Board and Office failed because Lewis
did not allege that the officers followed a county custom or policy.
The Fourth Amendment claim against the officers failed because
the officers had reasonable suspicion to stop Lewis and probable
cause to arrest him. And the Fifth Amendment claim against the
officers failed because it alleged only violations of *Miranda* proce-
dure, and such violations are not themselves violations of the Fifth
Amendment.

The Magistrate Judge also recommended dismissing the
state law negligence and premises liability claims, explaining that
the district court has discretion to dismiss state law claims when it
has dismissed all federal law claims in a case and the Eleventh Cir-
cuit has "encouraged" the exercise of this discretion.

Lewis objected to the R&R and filed a motion to recuse both
the District Judge and the Magistrate Judge assigned to the case. He
argued that the District Judge had failed to recuse a different Mag-
istrate Judge in a prior case, causing an appearance of partiality and
impropriety. He also stated that the Magistrate Judge in the instant

---

[6] The Magistrate Judge explained that, though Lewis did not specifically state
that he brought his ADA claim under Title III of the ADA, the nature of the
allegations suggests that it was Lewis's intent. Lewis does not challenge that
conclusion.

6                    Opinion of the Court                    25-11913

case lacked jurisdiction over the case. The District Judge denied the recusal motion, adopted the Magistrate Judge's R&R, and dismissed all claims.[7]

Lewis timely appeals the dismissal of his ADA claim against ALDI, his Fourth and Fifth Amendment claims against the Board and Office,[8] and his state law negligence and premises liability claims against ALDI. He also appeals the denial of his motion to recuse the District Judge.[9] We address each issue in turn.

---

[7] Though the Magistrate Judge's R&R did not specifically discuss Lewis's ADA claims against the officers, these claims were dismissed as the District Judge's order dismissed all claims.

[8] Lewis does not specifically state that he is appealing both claims against the Board and the Office, but he argues that the Court erred in finding that he did not allege a custom or policy under 42 U.S.C. § 1983. Because the Magistrate Judge's discussion of § 1983 pertained to both claims against the Board and the Office, we read Lewis's argument to appeal the dismissal of both.

[9] Lewis did not appeal the dismissal of his Fifth Amendment or ADA claims against the officers, so any challenges to those dismissals are deemed abandoned. *See Timson*, 518 F.3d at 874. Lewis also did not appeal the denial of the recusal motion as it pertained to the Magistrate Judge. Therefore, any argument that the denial was improper is also abandoned. *See id.* Lewis does argue that "[d]etention based solely on an uncorroborated 911 call" violates the Fourth Amendment and Florida law. To the extent that this can be read as challenging the dismissal of his Fourth Amendment claims against the officers, it is rejected. Lewis's detention was not based solely on an uncorroborated 911 call. Indeed, other customers in the store gave Stovall an account of what happened before she asked Lewis for his identification. According to Lewis, their statements matched his version of events. Without any additional detail, we are left to assume that this means they told the officers that a fight occurred and was initiated by the other customer. Still, that would have given support to the information in the 911 call that someone matching Lewis's description

## II.

An in forma pauperis action shall be dismissed at any time if the court determines that it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). We review de novo these dismissals, using the same standards that govern dismissals under Federal Rule of Civil Procedure 12(b)(6) and viewing the allegations in the complaint as true. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). This "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. And "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). The standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, though a court is to liberally construe documents filed by a pro se party, that duty "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient

---

was involved in a fight. In other words, the other customers corroborated the call.

pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

### A.

Title III of the ADA prohibits discrimination against disabled persons in public accommodations. 42 U.S.C. § 12182(a). To make a claim under Title III, a plaintiff must show (1) that he is disabled, (2) that the defendant operates a place of public accommodation, and (3) that the defendant discriminated against the plaintiff within the meaning of the ADA. *Id.*; *see also Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1231 (11th Cir. 2021). A grocery store is a public accommodation, 42 U.S.C. § 12181(7)(E), and discrimination under the ADA includes the denial of the opportunity to benefit from services, 42 U.S.C. § 12182(b)(1)(A)(i).

To have standing to sue, a plaintiff must show (1) that he suffered an injury-in-fact, (2) that is traceable to the defendant's allegedly unlawful action, and (3) that will be redressed by a favorable decision. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). However, a plaintiff who seeks injunctive relief—which is "the only form of relief available . . . under Title III of the ADA"—must show that, in addition to suffering a past injury, there is "a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Id.* at 1328–29. To make that showing, the plaintiff must establish that the threat of future unlawful conduct is "real and immediate . . . as opposed to . . . merely conjectural or hypothetical." *Id.* at 1329.

The Court below dismissed Lewis's claim because he failed to show a sufficient likelihood of future unlawful conduct. In his brief on appeal, Lewis argues that a lifetime ban violates the ADA's guarantee of equal access. Reading this as an argument that he did allege a sufficient likelihood of future unlawful conduct, we disagree. First, while Lewis's complaint did allege that he was trespassed from ALDI, it did not allege that he was trespassed for life. He, therefore, did not allege a lifetime ban. Second, assuming that the trespass was a lifetime ban, Lewis's complaint did not allege that he attempted to return to ALDI or that he intended to do so in the future. "Absent such an allegation, the likelihood of future discrimination remains conjectural, hypothetical, or contingent, and not real and immediate." *Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001) (internal quotation marks omitted). Therefore, Lewis failed to state an ADA claim against ALDI upon which relief can be granted.

### B.

"Section 1983 provides a cause of action against any person acting under color of state law who subjects a person or causes a person to be subjected to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Vega v. Tekoh*, 597 U.S. 134, 141, 142 S. Ct. 2095, 2101 (2022) (alterations adopted) (internal quotation marks omitted). To impose § 1983 liability on a local government entity, a plaintiff must show that (1) his constitutional rights were violated, (2) the municipality had a custom or policy that constituted a deliberate indifference to that

constitutional right, and (3) the policy or custom caused the viola-tion. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A cus-tom or policy can be "an officially promulgated county policy" or "an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). The municipality can also be liable if "a subordinate public official ma[de] an unconstitu-tional decision and . . . that decision [was] then adopted by some-one who does have final policymaking authority." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016).

1.

People have a constitutional right to be free from unreason-able searches and seizures. U.S. Const. amend. IV. An investigatory detention is constitutional if it is supported by reasonable suspi-cion, and an arrest is constitutional if it is supported by probable cause. *United States v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007). Reasonable suspicion exists if, based on a totality of the circum-stances, the officer had "a particularized and objective basis for sus-pecting legal wrongdoing." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). "[P]robable cause exists when the facts, con-sidering the totality of the circumstances and viewed from the per-spective of a reasonable officer, establish a probability or substan-tial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022).

In his complaint, Lewis did not plausibly allege that his sei-zure was a result of a policy or custom. While he made conclusory

statements that the Board had "[p]olicy customs" of unconstitutional behavior and unlawful detentions, that is not enough to support a plausible claim for relief. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Further, though he now argues that a municipality can be liable for even one incident of unconstitutional behavior, Lewis failed to allege that any official with final policy-making authority adopted the unconstitutional decision of a subordinate. Lewis failed to state a Fourth Amendment claim against the Board or the Office upon which relief can be granted.

### 2.

People have a constitutional right against self-incrimination. U.S. Const. amend. V. This right "permits a person to refuse to testify against himself at a criminal trial in which he is a defendant and also privileges him not to answer official questions put to him in any other proceeding . . . where the answers might incriminate him in future criminal proceedings." *Vega*, 597 U.S. at 141 (internal quotation marks omitted). It also "bars the introduction against a criminal defendant of out-of-court statements obtained by compulsion." *Id.* To protect this right, "custodial interrogation [must] be preceded by the now-familiar [*Miranda*] warnings . . . , and . . . statements obtained in violation of [that] rule[] may not be used by the prosecution in its case-in-chief." *Id.* However, "a violation of *Miranda* is not itself a violation of the Fifth Amendment." *Id.* at 152. Indeed, the *Miranda* rules protect a constitutional right, but they are not actually required by the Constitution. *Id.* at 149 ("The *Mi*-

*randa* rules are prophylactic rules that the Court found to be necessary to protect the Fifth Amendment right against compelled self-incrimination. In that sense, *Miranda* was a 'constitutional decision' and it adopted a 'constitutional rule' because the decision was based on the Court's judgment about what is required to safeguard that constitutional right.").

Here, as above, Lewis did not plausibly allege that any Fifth Amendment violation was the result of a custom or policy. He made conclusory statements that the county had customs for unconstitutional practices, but that is not enough to give rise to a claim for relief. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Further, though he argues now that a single incident can qualify as a policy for purposes of municipality liability, he, again, does not make any allegation that an official with final policymaking authority adopted the unconstitutional decision of a subordinate. Beyond that, Lewis's Fifth Amendment claim focuses solely on violations of *Miranda* procedure, which, in and of themselves, do not constitute Fifth Amendment violations. *Vega*, 597 U.S. at 149. Lewis failed to state a Fifth Amendment claim against the Board or the Office upon which relief can be granted.

## III.

We review a district court's decision not to exercise supplemental jurisdiction over state law claims for abuse of discretion. *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 738 (11th Cir. 2006). "An abuse of discretion occurs when a district court commits a clear error of judgment, fails to follow the proper legal standard

or process for making a determination, or relies on clearly erroneous findings of fact. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017).

A district court has original subject matter jurisdiction over claims arising under federal law, 28 U.S.C. § 1331, and it has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Once it has dismissed all federal claims in a case, the court has the discretion to either continue to exercise supplemental jurisdiction over any remaining state law claims or dismiss them. *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."). Factors that may be considered in that choice include "judicial economy, convenience, fairness, and comity." *Baggett*, 117 F.3d at 1353. And concerns of federalism "counsel in favor of dismissing state-law claims after the federal claims are dismissed," *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022), especially when the federal claims are dismissed in the early stages of the lawsuit, *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S. Ct. 614, 619 (1988).

Lewis's case is in its infancy. Indeed, the defendants have not even responded to his complaint. The District Court was within its

wide discretion in declining to exercise its supplemental jurisdiction over the state law negligence and premises liability claims and dismissing them.

## IV.

We review a district court's denial of a recusal motion for abuse of discretion. *Draper v. Reynolds*, 369 F.3d 1270, 1274 (11th Cir. 2004).

A district judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Similarly, a party may seek recusal of a district judge by filing an affidavit stating that the judge is biased or prejudiced and the grounds for believing that. 28 U.S.C. § 144. "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000). "Under § 455, the standard is whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." *Id.* In either case, the bias must stem from extrajudicial sources, *Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983), and "judicial rulings alone almost never constitute a valid basis" for recusal, *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994).

Here, Lewis points only to the District Judge's past ruling against him as evidence of bias. This one ruling is not enough to show bias against Lewis. The District Court did not abuse its discretion in denying the motion.

## V.

We affirm the dismissal of Lewis's claims and the denial of his recusal motion.

**AFFIRMED.**